STATE OF CONNECTICUT *v.* JOHN RAGUSEO
(14382)

PETERS, C. J., BORDEN, BERDON, NORCOTT and SANTANIELLO, Js.

Argued December 2, 1992—decision released March 23, 1993

*John F. Kavanewsky, Jr.,* special public defender, for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *James Bernardi,* assistant's state's attorney, for the appellee (state).

BORDEN, J. The defendant, John Raguseo, appeals[1] from the judgment of conviction, after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[2] The defendant claims that the trial court improperly: (1) denied his motions for a judgment of acquittal and for a new trial because the evidence did not establish that he had the intent to cause the death of the victim; (2) denied his motions for a judgment of acquittal and for a new trial because the evidence established the affirmative defense of extreme emotional disturbance; (3) instructed the jury regarding the affirmative defense of extreme emotional distress; (4) instructed the jury regarding motive and premeditation; (5) refused to exclude testimony of the defendant's expert witness regarding the defendant's consumption of alcohol prior to the crime; (6) allowed the state's expert witness to testify to an opinion on the ultimate issue of the defendant's guilt; and (7) denied the defendant's motion for a new trial that was based on evidence obtained fol-

---

[1] The defendant appeals pursuant to General Statutes § 51-199 (b) (3), which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years."

[2] General Statutes § 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person."

lowing the defendant's commitment to the Whiting Forensic Institute.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant lived in an apartment building on Clinton Avenue in Norwalk. The apartment building had its own parking lot for its tenants, and each tenant had an assigned parking space. The defendant owned a 1983 Camaro automobile that he parked in the space, and a 1979 Plymouth van that he parked at his mother's house. He took meticulous care of both vehicles and the parking space at his apartment building. He posted a no parking sign in front of the space, and he often swept the space, painted the lines on either side of the space, and clipped the shrubbery on a nearby fence. Prior to the crime, the defendant had repeatedly complained to the apartment building's superintendent about the unauthorized use of his parking space by the guests of other tenants.

At approximately 12:20 a.m., on June 21, 1990, the defendant returned home to find that someone had parked in his space. The defendant parked his vehicle directly behind the automobile in his space so that the

---

[3] On appeal, the defendant has raised seven claims. The large number of claims, however, "serves neither the ends of justice nor the defendant's own purposes as possibly meritorious issues are obscured by the sheer number of claims that are put before us.

"Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue] . . . . Jackson, 'Advocacy Before the United States Supreme Court,' 25 Temple L.Q. 115, 119 (1951); *Jones* v. *Barnes,* 463 U.S. 745, 752, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

"Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . R. Stern, 'Appellate Practice in the United States' 266 (1981). *Jones* v. *Barnes,* supra." (Internal quotation marks omitted.) *State* v. *Pelletier,* 209 Conn. 564, 566–67, 552 A.2d 805 (1989).

other automobile could not be moved. The defendant then went inside the building to his apartment. He called 911 to complain that someone had parked in his space but the police informed him that they could not tow the vehicle because it was parked on private property. He also telephoned a friend, Carol Bakinowski, to complain that someone had parked in his space and that he did not know what he would do if "someone comes to the door and starts abusing me." While they were speaking, Bakinowski could hear a loud banging noise in the background. The defendant told her that he was banging a knife on the kitchen table.

At approximately 2 a.m., the defendant saw from his window that the victim in this case, Philip Iacozza, had parked in his space, and had returned to his automobile and was trying to back out of the parking space. When the defendant saw the victim almost back the automobile into his vehicle, he took the knife and went down to the parking lot.

After a brief verbal exchange, the defendant repeatedly stabbed the victim in the head and torso. The defendant then returned to his apartment and called the police. When police officers arrived, he stated that "he couldn't take it any more, that he had done it, and that he was tired of people parking in his parking space." The defendant told the officers that they could find the knife with which he had stabbed the victim in the kitchen. The officers then found a blood-stained, eight inch knife in the kitchen sink.

The state charged the defendant in an information with murder in violation of General Statutes § 53a-54a (a). The defendant at trial did not deny that he had caused Iacozza's death, but instead claimed that: (1) he did not have the intent to cause the death of Iacozza; (2) he was not guilty because of a mental disease or defect; and (3) he had acted under the influence

of an extreme emotional disturbance. The jury returned a guilty verdict and the court rendered a judgment on the information. The defendant was then committed to the Whiting Forensic Institute, but later was transferred to the Somers correctional facility.

I

The defendant first claims that the trial court improperly denied his motions for a judgment of acquittal and a new trial because the evidence did not establish that he had the intent to cause the death of the victim. We disagree.

"In reviewing a sufficiency of the evidence claim, the dispositive question is whether, viewing the evidence in the light most favorable to sustaining the verdict, the trier of fact reasonably could have concluded, from the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991) . . . ." *State* v. *Rodriguez,* 223 Conn. 127, 146, 613 A.2d 211 (1992). Although "the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. *State* v. *Castonguay,* 218 Conn. 486, 507, 590 A.2d 901 (1991). If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. *State* v. *Grant,* 219 Conn. 596, 604–605, 594 A.2d 459 (1991)." (Internal quotation marks omitted.) *State* v. *Stanley,* 223 Conn. 674, 678, 613 A.2d 788 (1992).

The defendant was charged with murder in violation of General Statutes § 53a-54a. " 'In order to be convicted under our murder statute, the defendant must possess the specific intent to cause the death of the victim. General Statutes § 53a-54a. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. General Statutes § 53a-3 (11) . . . . *State* v. *Carpenter,* 214 Conn. 77, 82, 570 A.2d 203 (1990). Ordinarily, intent can only be proved by circumstantial evidence; it may be and usually is inferred from the defendant's conduct. Id. Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . . Id., 82–83 . . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct. . . . *State* v. *Montanez,* 219 Conn. 16, 20, 592 A.2d 149 (1991).' " *State* v. *Stanley,* supra, 678–79.

On the basis of the evidence and the inferences reasonably drawn therefrom, the jury could have concluded beyond a reasonable doubt that the defendant had intended to kill the victim. The defendant had been angry because, upon returning home from work, he discovered a vehicle parked in his parking space. He blocked the victim's vehicle from leaving and watched the space from the window to see when the driver would return. While waiting, he repeatedly banged the murder weapon against his kitchen table. As soon as he saw the victim, he left his apartment, carrying an eight inch knife, and attacked the victim. He inflicted approximately fifteen stab wounds, most in vital areas of the body. Many of the wounds were deep and reached vital organs of the victim. In light of these facts, we conclude that there was ample evidence from which the jury could have concluded beyond a reasonable doubt that the defendant had the intent to kill the victim.

## II

The defendant claims that the trial court improperly denied his motions for a judgment of acquittal and for a new trial because the evidence established the affirmative defense of extreme emotional disturbance. We disagree.

Conflicting evidence was introduced at trial regarding the defendant's mental state both before and after the attack on the victim. Bakinowski testified that she had known the defendant for several years and that he had a history of reacting poorly to unexpected events. She also testified concerning the defendant's repeated concern about people parking in his space, and his meticulous care of the van and automobile. Finally, she testified that the defendant, prior to the time of the murder, had become increasingly depressed, and that, during the telephone conversation just prior to the attack, he had sounded desperate.

The defendant's mother testified that her son had had emotional problems for many years, and had been hospitalized on several occasions, including one instance following a suicide attempt. The defendant also elicited testimony from police officers that he had been agitated and upset when they arrived at his apartment shortly after the attack. The defendant also presented his medical records and the testimony of James R. Merikangas, a neurologist and psychiatrist, who had examined the defendant for trial. Merikangas testified that it was his diagnosis that, on June 21, 1990, the defendant suffered from paranoid schizophrenia and that, as a result, the defendant's thinking was illogical and irrational.

The state presented testimony, however, disputing the defendant's evidence as to his degree of emotional disturbance. John Sullivan, a psychiatrist, testified for

the state that, although the defendant had difficulty controlling his anger at times, there was nothing to indicate that the defendant had been psychotic or out of touch with reality. Several police officers testified that the defendant had not appeared to be agitated or shaking, and responded to questions calmly. Moreover, one police officer testified that the defendant did not appear to be "at the end of his rope."

Section 53a-54a (a) provides in relevant part that "it shall be an affirmative defense [to the crime of murder] that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Extreme emotional disturbance "is a mitigating circumstance which will reduce the crime of murder to manslaughter." *State v. Asherman,* 193 Conn. 695, 731, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

The burden is on the defendant to prove the affirmative defense of extreme emotional disturbance by a preponderance of the evidence. *State v. Traficonda,* 223 Conn. 273, 280, 612 A.2d 45 (1992); *State v. Asherman,* supra. "In the final analysis, the ultimate determination of the presence or absence of extreme emotional disturbance [is] one of fact for the trier, aided by the expert testimony of both sides, but left to its own factual determinations." (Internal quotation marks omitted.) *State v. Steiger,* 218 Conn. 349, 383, 590 A.2d 408 (1991).

The state concedes that there was substantial evidence that the defendant acted under an extreme emotional disturbance. The defendant, on the other hand,

also concedes that there was some evidence suggesting that he did not act under an extreme emotional disturbance. In light of these concessions, we rely on the fundamental role of the jury as the finder of fact. In a case in which the evidence is conflicting, it is the quintessential jury function to reject or accept certain evidence, and to believe or disbelieve any expert testimony. See, e.g., *State* v. *Forrest,* 216 Conn. 139, 148, 578 A.2d 1066 (1990); *State* v. *Zdanis,* 182 Conn. 388, 395, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981).

The defendant, relying on our decision in *State* v. *Hammond,* 221 Conn. 264, 604 A.2d 793 (1992), argues that these evidentiary standards do not apply because the evidence of his extreme emotional disturbance was "truly overwhelming." In *State* v. *Hammond,* supra, 268, we stated that if the judge concludes that the verdict is "so clearly against the weight of the evidence . . . as to indicate that the jury did not correctly apply the law to the facts in evidence . . . or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside the verdict. . . . In such a case, [a] verdict may be set aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury." (Internal quotation marks omitted.) (DNA evidence suggesting that it was physically impossible for defendant to have committed offense).

In the present case, the defendant has not demonstrated that the jury incorrectly applied the law to the facts or was governed by ignorance, prejudice, corruption or partiality. To the contrary, there were substantial facts from which the jury could have concluded that the defendant did not act under an extreme emotional disturbance. The jury heard testimony from the state's expert witness that the defendant was not psychotic and that he was not unreasonable in desiring not to

have anyone else park in his space. Furthermore, there was ample testimony that the defendant, immediately following the attack on the victim, was not in a state of extreme emotional disturbance but instead remained calm, called the police, and understood the import of his actions. From these facts, and the jury's right to reject any or all of the defendant's evidence, we conclude that the trial court properly denied the defendant's motions for a judgment of acquittal and a new trial.

## III

The defendant claims that the trial court improperly instructed the jury regarding the affirmative defense of extreme emotional disturbance. We are not persuaded.

The following facts are relevant to this claim. The trial court instructed the jury on extreme emotional disturbance, in relevant part, as follows: "Our statute on the affirmative defense of extreme emotional disturbance insofar as it applies to this case provides that, 'in any prosecution for murder, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.' . . .

"I will now discuss with you the elements of the affirmative defense of extreme emotional disturbance. There are three elements to this affirmative defense.

"First; the defendant's emotional disturbance was not a mental disease or defect that rises to the level of the affirmative defense of mental disease or defect as that has been defined [for] you. That is, that he was

not suffering from a mental disease or defect that caused him to lack substantial capacity as a result of that mental disease or defect either to appreciate the wrongfulness of his act or to adjust his conduct to the requirements of the law.

"Secondly; that the defendant was exposed to an extremely unusual and overwhelming stress that is more than mere annoyance or unhappiness. While this emotional stress might often be caused by a sudden triggering situation, hot blood as you say, it might as well arise by virtue of a significant mental trauma caused—causing a long period of brooding or dwelling on some presumed injustice.

"And thirdly; the defendant had an extreme emotional reaction to this state as a result of which there was a loss of self control and his reason was overborne by intense feelings, such as passion or anger or distress or grief, or excessive agitation or other similar emotions. You should give consideration as to whether the intensity of these feelings was such that the defendant's usual intellectual and emotional controls failed, and that his normal rational thinking no longer prevailed at the time of the act.

"As used in this affirmative defense, the word 'extreme' means the greatest degree of intensity away from the norm, away from the normal or usual state for the defendant.

"If you find that the defendant acted under extreme emotional disturbance as I have defined that term for you, you must also find . . . that there was a reasonable explanation . . . for any emotional disturbance suffered by the defendant at the time of the stabbing. The reasonableness of this explanation or excuse is to be determined from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be."

The jury deliberated for more than four days. The jury asked for reinstruction on this affirmative defense on three separate occasions. The reinstructions were, for the most part, the same as the original instruction. After the second reinstruction, the court also stated: "And here if the evidence and the claims of the defendant, as I understand it, is that the—there was a trauma causing a long period of dwelling on presumed injustice with regard to the circumstances involving himself and involving his parking—allotted parking space."

After further deliberation, the jury sought reinstruction again on extreme emotional disturbance, requesting that the trial court focus on: (1) the three factors that make up the defense and whether all three must be met; (2) the definition of the "norm" and whose norm is relevant, society's or the defendant's; and (3) the reasonable person's perspective. The trial court repeated its prior instructions and also stated that the reasonableness of the explanation for the emotional disturbance must be "determined from the viewpoint of a reasonable person; that is, a person of ordinary intellect and faculties, who finds him—who would find himself in the defendant's situation under the circumstances as the defendant believed it to be."

## A

The defendant first argues that the charge on extreme emotional disturbance was improper because the jury was instructed that the reasonableness of the explanation or excuse for the emotional disturbance was to be determined from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be. The defendant contends that the jury should be instructed that the reasonableness of the explanation or excuse must be determined from his perspective rather than a reasonable person's perspective. Additionally, the

defendant argues that this instruction is improper in any case in which the defendant has also raised the affirmative defense of mental disease or defect because the jury is likely to become confused about the relationship between the affirmative defenses. We disagree.

In *State* v. *Ortiz,* 217 Conn. 648, 652–53, 588 A.2d 127 (1991), we rejected a virtually identical challenge to such an instruction. In *Ortiz,* the defendant claimed that § 53a-54a (a) required an instruction that the jury must consider the reasonableness of the explanation or excuse as determined from the *defendant's* viewpoint rather than from the viewpoint of a reasonable person in the defendant's situation under the circumstances as he believed them to be. Relying on our decision in *State* v. *Elliott,* 177 Conn. 1, 411 A.2d 3 (1979), we concluded that the legislature intended to establish " 'a standard that is objective in its overview, but subjective as to the defendant's belief'; id. [7]; and, with regard to the objective element contained in the statute, [we stated] that 'the reasonable man yardstick is only used to determine the reasonableness of the explanation or excuse of the action of the defendant from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.' " *State* v. *Ortiz,* supra, 653.

We reasoned in *Ortiz* that the defendant's challenge to the instruction, as in the present case, would "eviscerate the element of objectivity that the drafters intended to preserve," and would make the inquiry entirely subjective. Id., 657. We recently affirmed *Ortiz* in *State* v. *Steiger,* 218 Conn. 349, 385, 590 A.2d 408 (1991). In the present case, the defendant has not presented any significant justification for overruling *Ortiz* other than an unsupported claim that the standard is unworkable.[4] " '[A] court should not overrule its earlier

---

[4] The defendant concedes that no state has adopted a totally subjective extreme emotional disturbance defense, as would be required if we were to agree with his claim.

decisions unless the most cogent reasons and inescapable logic require it.' "[5] *Connecticut National Bank* v. *Commissioner of Revenue Services,* 209 Conn. 429, 435–36, 551 A.2d 417 (1988).

The defendant also argues that the instruction was improper because it could not be understood in conjunction with the evidence relating to his affirmative defense of mental disease or defect. This argument is unpersuasive. First, the trial court carefully instructed the jury that it was to consider the defendant's affirmative defense of extreme emotional disturbance *only if* it had first rejected the defendant's affirmative defense of mental disease or defect. Furthermore, the trial court specifically instructed the jury that the extreme emotional disturbance defense "is different from the affirmative defense of mental disease or defect which I explained to you earlier. . . . [T]hat affirmative defense, the defense of disease or [mental] defect is a complete defense to criminal liability and if the defendant establishes it, results in a verdict of not guilty by reason of mental disease or defect." Finally, the trial court explained that, in order for the jury to conclude that the defendant had established the defense of extreme emotional disturbance, it must find, in addition to other elements, that "the defendant's emotional disturbance was not a mental disease or defect that rises to the level of the affirmative defense of mental disease or defect as that has been defined [for] you."

[5] The defendant requests that, in the absence of a decision to overturn *State* v. *Ortiz,* 217 Conn. 648, 588 A.2d 127 (1991), we limit our decision in *Ortiz* by requiring a purely subjective instruction on extreme emotional disturbance in a case, as in the present one, in which the defendant also raises the affirmative defense of mental disease or defect. As noted above, however, the affirmative defense of extreme emotional disturbance is properly considered by the jury only if it has already rejected the affirmative defense of mental disease or defect. In light of that procedure, the defendant's request to limit *Ortiz* is simply a replication of his earlier argument that *Ortiz* was wrongly decided.

After a careful review of this charge, we conclude that the instructions adequately guided the jury as to the relationship between the two defenses and their separate elements.[6] This not a case in which only a jury "composed of [twelve] lawyers" could have adequately understood the instructions. See *State* v. *Milardo,* 224 Conn. 397, 422, 618 A.2d 1347 (1993) (*Berdon, J.,* dissenting). Although the jury requested reinstruction several times on the affirmative defense of extreme emotional disturbance, we are not obligated to infer from that fact that the jury was not given adequate guidance or that the charge ultimately could not be comprehended by laypersons. *State* v. *Rivera,* 223 Conn. 41, 44–47, 612 A.2d 749 (1992) (instructions on extreme emotional disturbance provided adequate guide to jury despite jury's request for reinstruction on defense four times). In the present case, the "trial court's instructions and reinstructions were clear and

---

[6] Additionally, the trial court provided a verdict form to the jury that, similar to the oral jury instructions, individually listed the possible verdicts that the jury could return and the order in which the issues and defenses should be considered. The form read in relevant part:

"POSSIBLE VERDICTS

"1. If you find that the State has proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, you must then consider the affirmative defense of mental disease or defect;

"2. If you find that the State has proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, but find that the defendant has proven the affirmative defense of mental disease or defect, you need consider no further and your verdict would be: NOT GUILTY BY REASON OF MENTAL DISEASE OR DEFECT;

"3. If you find that the State has proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, but also find that the defendant has not proven the affirmative defense of mental disease or defect, you must then consider the affirmative defense of extreme emotional disturbance;

"4. If you find that the State has proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, and also find that the defendant has not proven the affirmative defense of mental disease or defect, but do find that the defendant has proven the affirmative defense of extreme emotional disturbance, you need consider no fur-

comprehensible and sufficient to provide guidance to the jury in applying the law to the facts it [found] established." (Internal quotation marks omitted.) Id., 47.

## B

The defendant also argues that the trial court improperly instructed the jury on extreme emotional disturbance because it mischaracterized the defendant's evidence in relation to this affirmative defense. In the last set of reinstructions, the court stated: "I believe the evidence . . . is that the defendant is claiming not that there was a sudden triggering situation that created this unusual or overwhelming stress, but that it was trauma, mental trauma, significant mental trauma causing a long period of brooding or dwelling on some presumed injustice, and the evidence is concerning this parking space." Specifically, the defendant argues that this instruction improperly suggested that the jury was free to consider only evidence of a long period of brooding and was not free to consider the evidence suggesting a sudden provocation based on the defendant's confrontation with the victim over the parking spot. We disagree.

Contrary to the defendant's argument, we do not read this instruction as containing an order, explicit or implicit, to disregard the evidence relating to a sudden triggering event, such as the defendant's confrontation with the victim regarding the parking space. First, the trial court did not tell the jury that a sudden

ther and your verdict would be: NOT GUILTY OF MURDER BUT GUILTY OF MANSLAUGHTER IN THE FIRST DEGREE UNDER THE INFLUENCE OF EXTREME EMOTIONAL DISTURBANCE;

"5. If you find that the State has proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, and also find that the defendant has not proven the affirmative defense of mental disease or defect and also find that the defendant has not proven the affirmative defense of extreme emotional disturbance, you need consider no further and your verdict would be: GUILTY OF MURDER AS CHARGED."

incident could not have provided an adequate basis for the defense. In fact, the trial court's earlier instructions and reinstructions specifically mentioned the possibility of a sudden triggering event. Second, the trial court stated that it was only its belief that the evidence supported a "long period of brooding" instead of a "sudden triggering situation."

Moreover, prior to this reinstruction, the trial court had instructed the jury as to its role as the finder of fact: "If during the course of this charge I refer to certain evidence or facts, my purpose is to [allude] to them only insofar as it is necessary to make clear to you, the application of the rules of law which are relevant in this case. When I do refer to certain facts or evidence, you are not [to] assume I mean to emphasize those facts or that evidence, nor must you limit your consideration only to them. Should I overlook any evidence in the case, you will supply it from you own recollection. And should I incorrectly state any evidence in relation to your own recollection, you will correct my error and apply your own recollection."

The jury is " 'presumed to follow the court's directions in the absence of a clear indication to the contrary.' " *State* v. *Negron,* 221 Conn. 315, 331, 603 A.2d 1138 (1992). In the context of the entire instructions and reinstructions, the trial court's statement could not have misled a reasonable juror into concluding that a sudden triggering event was not relevant to the defendant's affirmative defense. See *State* v. *Milardo,* supra, 409. Finally, we are not convinced that the trial court mischaracterized the defendant's evidence. Virtually all the evidence introduced by the defendant, including his past psychological history and his long-running concern about his parking space, if believed, tended to demonstrate that the defendant suffered from "a mental trauma causing a long period of brooding or dwelling on some presumed injustice." On the other hand,

the defendant offered minimal evidence on the actual confrontation between him and the victim in the parking lot. Consequently, we conclude that the trial court properly instructed the jury on the affirmative defense of extreme emotional disturbance and properly characterized the defendant's evidence.

## IV

The defendant next claims that the trial court improperly refused to instruct the jury that the absence of motive or premeditation may tend to raise a reasonable doubt as to his intent. We disagree.

The following facts are relevant to this claim. The trial court instructed the jury at length on motive and premeditation.[7] The trial court charged the jury that

[7] The trial court gave the following instruction on motive and premeditation: "On this issue, you may wish to examine for example, what motive if any there was for the acts; where the act took place; the length of time it took to commit the act; the number of stab wounds inflicted and the manner in which they were inflicted, or any other factors which you consider relevant.

"Now, I've mentioned motive, but I must caution you about that question. Because the killing of one human being by another is so abhorrent to us, we . . . begin to wonder why it was done . . . . In other words, what was the motive? This is so common a reaction that we often hear motive discussed in connection with a killing as if it were a necessary factor in the law of Murder [or] of any other homicide. But it is not.

"While you have heard some testimony from several witnesses as to the defendant's words or conduct which might be considered his reason for causing death, I must instruct you that the whole question of motive is only of secondary importance. It may or [may] not have a bearing on the facts. It may, whether you are or whether you are not convinced that a motive existed, help your general understanding of the factual situation. But motive is not a necessary element of Murder . . . . The crime may or may not be proved without consideration of motive whatsoever. Motive is not the same as intent. Proof of intent is absolutely necessary for the crime of murder. Motive . . . is the reason or believed reason for causing death. . . .

"Now, premeditation, planning or giving thought to the act for any space of time, is not a prerequisite in determining intent. Intent may be formed in seconds, actually in a brief instant before the commission of an act. However, it is necessary for the intent to be formed prior to or during the act or acts resulting in the commission of a crime."

it could consider the issue of motive but that the state did not need to prove motive in order for the jury to find the defendant guilty of the offense. The trial court explained that motive may or may not be helpful in considering evidence related to the issue of intent. The trial court, however, did not instruct the jury that the absence of motive or premeditation may tend to raise a reasonable doubt as to the defendant's intent. The defendant never filed a request for such a charge, but did, after the instructions were given, object to the instructions on that basis.

"[I]f the evidence warrants it and if an accurate and timely request to charge is made, the trial court must instruct the jury that a lack of evidence on motive may tend to raise a reasonable doubt."[8] *State* v. *Pinnock,* 220 Conn. 765, 790, 601 A.2d 521 (1992). If, however, the state introduces evidence tending to demonstrate a motive to commit the offense, then the trial court is not obligated to give such an instruction. Id., 790–92. In the present case, the defendant did not request this charge. Moreover, the state *and the defendant* introduced substantial evidence tending to demonstrate that the defendant attacked the victim because the victim had parked in the defendant's parking space. In the context of this case, that evidence tended to prove the defendant's motive for his conduct. Consequently, the trial court properly did not instruct the jury that the absence of motive or premeditation may tend to raise a reasonable doubt as to the defendant's intent.

V

The defendant claims that the trial court improperly refused to exclude testimony of the defendant's expert witness on cross-examination regarding the defendant's consumption of alcohol prior to the crime. We disagree.

---

[8] We have never held, however, that the same rule applies to evidence of premeditation.

In support of the defendant's affirmative defenses of mental disease or defect and extreme emotional disturbance, Merikangas testified that, at the time of the attack, the defendant suffered from paranoid schizophrenia, and that the attack would not have occurred but for the defendant's mental illness. Merikangas' testimony was based on a written report, portions of which he read aloud while testifying, that he had prepared in connection with his examination of the defendant. The written report stated, in a portion that Merikangas did not read aloud, that the defendant had consumed a six pack of beer and some wine prior to returning home on the evening of the attack. This portion of the report concluded that "Mr. Raguseo is a chronic paranoid schizophrenic . . . who under the stress of the circumstance felt threatened and because of a defect of mind and reason exacerbated by alcohol and diabetes was substantially incapable of conforming his conduct to the requirements of law."

On cross-examination, the state questioned Merikangas about his reliance on the defendant's consumption of alcohol and about the alcohol's effect on the defendant's actions. The defendant objected to this line of questioning but the trial court overruled that objection. The trial court cautioned the jury, however, that it was to consider Merikangas' testimony about the defendant's alcohol consumption, not as evidence that the defendant had in fact ingested alcohol that evening, but only to evaluate Merikangas' conclusions about the defendant's ability to control his behavior.

The defendant first argues that the trial court's ruling violated Practice Book § 760[9] because the testimony

---

[9] Practice Book § 760 provides: "PSYCHIATRIC EXAMINATION

"In an appropriate case the judicial authority may, upon motion of the prosecuting authority, order the defendant to submit to a psychiatric examination by a psychiatrist designated for this purpose in the order of the court. No statement made by the defendant in the course of any examination provided for by Sec. 757, whether the examination shall be with or without

concerned statements made by the defendant during the course of a mental examination. The defendant's argument, however, ignores § 760's preclusion of the evidence only on the issue of guilt. In this case, as the trial court specifically instructed the jury, the statement regarding the defendant's alcohol consumption was to be considered by the jury solely to evaluate the expert witness' opinion on the defendant's mental condition. See *State* v. *Steiger*, 218 Conn. 349, 362 n.13, 590 A.2d 408 (1991).

The defendant next argues that the statement should have been excluded because it was an answer to a hypothetical question that was based on facts not in evidence.[10] "[T]he determination of the admissibility of a hypothetical question calls for the exercise of a sound discretion as to whether the question, even [if] it does not contain all of the facts in evidence, presents the facts in such a manner that they bear a true and fair relationship to each other and to the whole evidence in the case . . . is not so worded as to be likely to mislead or confuse the jury, and is not so lacking in the essential facts as to be without value in the decision of the case." (Internal quotation marks omitted.) *Shelnitz* v. *Greenberg*, 200 Conn. 58, 77, 509 A.2d 1023 (1986). The jury "was entitled to consider the basis of

the consent of the defendant, shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding. A copy of the report of the psychiatric examination shall be furnished to the defendant within a reasonable time after the examination."

[10] The relevant exchange during cross-examination is as follows:

"[The State]: You concluded, did you not Doctor, that the defendant's behavior—excuse me—his defective mind and reason the morning in question, was exacerbated by alcohol; did you not?

"[Merikangas]: I did.

"[The State]: Do you have an opinion whether the defendant would have acted differently that night if he had not voluntarily ingested alcohol? . . .

"[Merikangas]: The answer is yes.

"[The State]: He would have acted differently?

"[Merikangas]: The answer that you have is that he may have, he may not have."

the testimony of the expert witness. . . . It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them." *State* v. *Perez,* 182 Conn. 603, 610, 438 A.2d 1149 (1981). Because the state's questions sought to elicit the bases of Merikangas' testimony, we conclude that the trial court did not abuse its discretion in admitting the testimony.[11]

## VI

The defendant next claims that the trial court improperly allowed the state's expert witness to testify to an opinion on the ultimate issue of the defendant's guilt. We are not persuaded.

John Sullivan, a psychiatrist, testified for the state to rebut the defendant's assertion of the affirmative defense of mental disease or defect. A defendant can prevail on that defense if he can demonstrate by a preponderance of the evidence that, as a result of a mental disease or defect, the defendant *"lacked substantial capacity . . .* either to appreciate the wrongfulness of his conduct or *to control his conduct within the requirements of the law."* (Emphasis added.) General Statutes § 53a-13 (a). On direct examination, the state asked Sullivan: "[D]o you have an opinion stated in terms of reasonable medical certainty whether at the time of the stabbing on June 21, 1990, the defendant had the ability to choose between alternative courses of action?" Over the defendant's objection, Sullivan testified that, in his opinion, the defendant had the ability to choose between alternative courses of action.

The defendant claims that by allowing this testimony the trial court violated General Statutes § 54-86i.[12] Sec-

---

[11] The defendant also argues that the evidence relating to his consumption of alcohol was unduly prejudicial and therefore should have been excluded. Because it was within the trial court's discretion to allow the questions, which were based on Merikangas' testimony, and because there was nothing inherently prejudicial about the defendant's alcohol consumption, we conclude that this argument is without merit.

[12] General Statutes § 54-86i provides: "TESTIMONY OF EXPERT WITNESS RE MENTAL STATE OR CONDITION OF DEFENDANT. No expert witness tes-

tion 54-86i prohibits an expert witness from testifying as to whether a criminal defendant did or did not have the mental state that constitutes an element of the crime charged or a defense to that crime. Section 54-86i permits, however, an expert witness to state his diagnosis of the mental state or condition of the defendant.

We have construed § 54-86i narrowly in accordance with our assumption that the legislature, in enacting the statute, intended a reasonable and rational result. *State* v. *Forrest*, 216 Conn. 139, 149, 578 A.2d 1066 (1990). "A broad construction of the statute . . . would arguably bar experts from fully testifying to their diagnoses of a defendant and to their resulting professional opinions, from which the jury could infer the defendant's state of mind at the time of a particular act. Jurors would thus be left without adequate expert assistance in making an informed decision upon the ultimate issue of the defendant's mental state, the precise issue expressly reserved to them by § 54-86i. Additionally, a defendant's ability to prove affirmative defenses involving mental state would be severely curtailed. Consequently, we do not believe that the legislature intended to proscribe expert opinion testimony with respect to a defendant's mental state so strictly as to render it an ineffective aid to the jury, or to eclipse the role of expert opinion testimony in substantiating a defendant's claim to have suffered from a certain mental condition at the time of an act alleged to be criminal in nature." Id.

tifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

Admittedly, Sullivan's testimony closely approximated the statutory language establishing the affirmative defense of mental disease or defect. In light of our narrow reading of § 54-86i, however, we conclude that the testimony was proper. The expert witness was not asked to testify as to whether the defendant "lacked substantial capacity . . . to control his conduct within the requirements of the law." General Statutes § 53a-13 (a). In the absence of testimony explicitly tracking the language of § 53a-13, the expert witness was not testifying to the ultimate issue of criminal responsibility. To hold otherwise, as noted above, would handicap criminal defendants from offering expert testimony that would directly support their assertion of an affirmative defense.[13]

Furthermore, the jury was explicitly instructed that it was "entitled to accept or reject in whole or in part, the evidence of the experts as to whether the defendant had a mental disease or defect." The jury was also instructed that "no matter what may be the expertise of a particular witness who states an opinion to you upon a fact in the case, that opinion is still subject to review at your hands. His opinion is [in] no way binding upon you." In light of our narrow construction of § 54-86i and the lack of any evidence that the jury did not follow these instructions, we conclude that the trial court did not violate § 54-86i in overruling the defendant's objection.

## VII

The defendant's final claim is that the trial court improperly denied the defendant's motion for a new

---

[13] In fact, the defendant introduced Merikangas' written report, which stated that "Mr. Raguseo is a chronic paranoid schizophrenic . . . who under the stress of the circumstance felt threatened and because of a defect of mind and reason exacerbated by alcohol and diabetes *was substantially incapable of conforming his conduct to the requirements of law.*" (Emphasis added.) This written statement is, of course, almost identical to the language of General Statutes § 53a-13.

trial that was based on evidence obtained following the defendant's commitment to the Whiting Forensic Institute (Whiting). We disagree.

Following the defendant's conviction, the defendant was committed to the Whiting. During that commitment the defendant underwent extensive psychological examination. Thereafter, the defendant petitioned the court for a new trial claiming that, in the course of these examinations, new evidence regarding a frontal lobe disorder was discovered that he claimed supported his affirmative defense of mental disease or defect.

"The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial." *State* v. *Asherman*, 202 Conn. 429, 434, 521 A.2d 578 (1987). "It is within the discretion of the trial court to determine, upon examination of all the evidence, whether the petitioner has established substantial grounds for a new trial, and the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion." Id.; *Kubeck* v. *Foremost Foods Co.,* 190 Conn. 667, 670, 461 A.2d 1380 (1983).

The trial court held an evidentiary hearing on the defendant's petition but concluded that the evidence of the frontal lobe disorder was not newly discovered evidence and was cumulative of evidence presented at trial. The record clearly supports this conclusion. The defendant's expert witness, Merikangas, had testified at trial that tests "indicated [an abnormality] in the

frontal lobes and the varietal occipital lobes . . . . In other words, there are areas of abnormality within the brain that are demonstrated by the MRI scan." Moreover, the defendant had offered extensive testimony concerning his psychological history and his mental condition prior to the attack. In light of this testimony, the trial court did not abuse its discretion by concluding that the defendant had failed to demonstrate the existence of newly discovered evidence and that evidence gathered from the Whiting examination was not cumulative of the evidence introduced at trial.

The judgment is affirmed.

In this opinion PETERS, C. J., NORCOTT and SANTANIELLO, Js., concurred.

BERDON, J., dissenting. I disagree with the majority, which upholds the trial court's jury instruction on the defense of extreme emotional disturbance pursuant to General Statutes § 53a-54a (a).[1] The trial court stated that the reasonableness of the explanation or excuse for the emotional disturbance was to be determined from the viewpoint of a *reasonable* person in the defendant's situation under circumstances as the defendant believed them to be. Although the majority finds support for its conclusion in *State* v. *Ortiz,* 217 Conn. 648, 588 A.2d 127 (1991), I believe that *Ortiz* was wrongfully decided on this issue. The trial court's injection of the term "reasonable" into the language of the extreme emotional disturbance defense created an overly objective test that prevented the jury from considering the defendant's mental abnormalities.

For this defense to make any sense, the jury's determination of whether there was a reasonable explanation or excuse for the extreme emotional disturbance (the objective test) must be determined from the

---

[1] See footnote 2 of the majority opinion.

defendant's viewpoint under circumstances as the defendant believed them to be (the subjective test), not the viewpoint of a reasonable person in the defendant's situation. The jury must be able to consider the defendant's eccentricities in order to assess the situation from the defendant's viewpoint. I have concluded that this subjective/objective test must be employed for several reasons.

The plain language of the statute directs us to determine the reasonableness of the explanation or excuse for the emotional disturbance "from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." General Statutes § 53a-54a (a). This clearly means the *defendant's* situation under the circumstances as the defendant perceived them to be.

Further support for taking the defendant's unique mental and emotional perspective into account when applying the extreme emotional disturbance defense can be found in *State* v. *Elliott,* 177 Conn. 1, 8–10, 411 A.2d 3 (1979), which holds that the "jury should be instructed that the reasonableness of a defendant's act under an extreme emotional disturbance is to be determined from the viewpoint of a person *in the defendant's situation* under the circumstances as the defendant believed them to be." (Emphasis added.) Id., 10. In *Elliott,* this court required analysis that focused on "the norm for that individual" defendant, rather than a reasonable person, in applying the extreme emotional disturbance defense. Id. The phrase "in the defendant's situation" requires the jury to consider not only the factual situation in which the defendant found himself (the parking space conflict), but the defendant's unique mental and emotional characteristics and the impact of these factors on his perception of the circumstances.

Our extreme emotional disturbance defense, as provided in § 53a-54a (a), is based on the Model Penal Code of the American Law Institute, Tentative Draft No. 9, § 201.3.[2] *State* v. *Elliott,* supra, 8. If there is any ambiguity in the language of § 53a-54a (a), the comments accompanying the Model Penal Code clarify that the jury must consider the defendant's situation in applying the defense. The important—and necessary—terms are "situation" and "circumstances." As the Model Penal Code comments explain, "[t]he word 'situation' is designedly ambiguous. On the one hand, it is clear that personal handicaps and some external circumstances must be taken into account. Thus, blindness, shock from traumatic injury, and extreme grief are all easily read into the term 'situation.' This result is sound, for it would be morally obtuse to appraise a crime for mitigation of punishment without reference to these factors. On the other hand, it is equally plain that idiosyncratic *moral* values are not part of the actor's situation." (Emphasis added.) II A.L.I., Model Penal Code and Commentaries (1980) § 210.3 (1) (b), comment, p. 62. Thus, the drafters intended the word "situation" to focus the jury's attention on the defendant's unique mental and emotional attributes, while still allowing the jury to determine whether a reasonable person would agree that the explanation or excuse for the defendant's emotional disturbance was objectively reasonable.

Additional support for this subjective/objective test can be found in *People* v. *Liebman,* 179 App. Div. 2d 245, 583 N.Y.S.2d 234 (1992), and *People* v. *Casassa,* 49 N.Y.2d 668, 404 N.E.2d 1310, 427 N.Y.S.2d 769, cert. denied, 449 U.S. 842, 101 S. Ct. 122, 66 L. Ed. 2d 50 (1980). These cases are helpful because § 53a-54a (a) is virtually identical to New York Penal

---

[2] Now codified as Model Penal Code § 210.3 (1985).

Law § 125.25 (1) (a), which sets forth the New York extreme emotional disturbance defense. *State* v. *Ortiz,* supra, 654 n.6.

Although *Ortiz* purportedly relied on *People* v. *Casassa,* supra, to support the conclusion that the reasonableness of the explanation or excuse for the emotional disturbance was to be determined from the viewpoint of a reasonable person in the defendant's situation, *Casassa* clearly endorses a test that is both subjective and objective and incorporates the defendant's subjective, internal idiosyncracies.

In *Casassa,* the New York Court of Appeals held that "[i]n light of . . . the necessity of articulating the defense in terms comprehensible to jurors, we conclude that the determination whether there was reasonable explanation or excuse for a particular emotional disturbance should be made by viewing the *subjective, internal situation* in which the defendant found himself and the external circumstances as he perceived them at that time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable, so as to entitle him to a reduction of the crime charged from murder in the second degree to manslaughter in the first degree." (Emphasis added.) Id., 679.

Following *Casassa,* the Appellate Division of the New York Supreme Court in *People* v. *Liebman,* supra, 241, noted that the "[a]pplication of the statute governing the availability of the defense of extreme emotional disturbance entails in each case an understanding of the situation as it would have been perceived, *not by a perfectly sensible individual* but by the particular defendant at bar." (Emphasis added.) The court further stated that "[i]t should be stressed that the issue in this case is not whether the defendant's

act of killing his wife was a reasonable response under the circumstances for, clearly, it was not. Rather, the issue is the reasonableness of the explanation offered for the defendant's extreme emotional reaction." Id.

In sum, the test for determining whether the extreme emotional disturbance defense should apply is both subjective, in that it permits the jury to consider the defendant's particular eccentricities, and objective, in that the jury is asked to determine whether the *explanation or excuse* for the defendant's disturbance was reasonable in light of his subjective situation and perception of the circumstances.

I can understand why the jury had difficulty applying the court's instructions—having been instructed on the extreme emotional disturbance defense four times—to the substantial evidence indicating extreme emotional disturbance. On the third reinstruction, the jury asked the trial court to focus on whether the definition of "norm" referred to the norm for the defendant or the norm for society.[3] The jury was obviously struggling to consider the defendant's emotional or mental imbalance in its determination of the defendant's situation. The court's use of the reasonable person standard, however, effectively precluded any consideration of the defendant's emotional or mental imbalance.

The facts of this case cried out for the application of the proper extreme emotional disturbance defense. In fact, the majority notes that there was "substantial" evidence to support the defense. Surely, it was

[3] The jury note requesting additional instructions from the court read as follows: "[O]nce again, we need the definition of extreme emotional disturbance focusing on ('really stressing on') the following: (1) The three factors that make up the charge and whether or not all three must be met. (2) Definition of 'norm.' Whose 'norm' are we comparing the action/thought process to—, the 'norm' for the defendant or the 'norm' for society? (3) Emphasize a 'reasonable' person's perspective. . . ."

not reasonable for the defendant to have such a fetish about his parking space. Nevertheless, the defendant's unreasonable fetish for his parking space, his paranoid perceptions of abuse at work connected with his belief in entitlement to parking, his history of reacting poorly to unexpected events, his increasing depression as well as his history of emotional problems, his diagnosis of paranoid schizophrenia and past attempts at suicide—none of which was reasonable from the perspective of a reasonable person, but all of which comprised the defendant's situation—should have been considered by the jury. Since the jury was unable to consider these factors, there was no reasonable explanation or excuse for the defendant's emotional disturbance precipitating the attack, and the defense became a meaningless distraction to the jury.

The mental state of the defendant presented serious issues that were underscored by a report on the defendant prepared subsequent to trial by the Whiting Forensic Institute, a state institution. The report was introduced into evidence in support of a new trial, the denial of which by the trial court I believe to have been an abuse of discretion. The report indicated that the defendant suffered from a mental disease or defect, and that he suffered from paranoid delusions and delusions of persecution. The report further indicated that the frontal lobe of the defendant's brain was damaged, which contributed to his psychosis. The majority passes over this report by stating that the doctor called by the defense testified to these abnormalities at trial. The majority fails to mention, however, that the doctor's credibility was shattered by the state during cross-examination on the matter of the defendant's consumption of alcohol. The Whiting report, in contrast, was prepared by agents of the state and would have been objectively placed before the jury for their evaluation without the heavy baggage of partisan advocacy.

Because the conduct of a person who has taken the life of another can rarely, if ever, be characterized as reasonable from the viewpoint of a reasonable person, the majority takes the heart out of the extreme emotional disturbance defense by upholding the "reasonable person" instruction. By adopting the extreme emotional disturbance defense, the legislature sought to bridge the gap between insanity and cold-blooded intent to kill. The majority's interpretation eliminates this bridge and forces the jury to choose one extreme or the other.[4]

Accordingly, I would order a new trial.

---

[4] I also take issue with footnote 3 of the majority opinion, which criticizes the defendant for raising seven issues. None of the seven issues was frivolous. Moreover, the defendant should not be put in a position of picking and choosing just to satisfy an arbitrary limit. If there are seven issues that have merit and may affect the outcome of the appeal, they should be raised.