## STATE OF CONNECTICUT *v.* CHARLIE SANTIAGO
### (AC 15914)

O'Connell, Foti and Landau, Js.

Argued March 21—officially released May 27, 1997

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard Palombo,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

violation of General Statutes § 53a-54a (a).[2] On appeal, the defendant claims that (1) the evidence was insufficient to prove that he possessed the intent to cause the death of the victim, (2) the state failed to disprove that he was acting in self-defense, and (3) he was deprived of a fair trial by remarks made by the prosecutor in his closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 12, 1993, at approximately 12:30 p.m., the defendant was washing his car in a housing complex in Bridgeport known as the P.T. Barnum apartments when he was approached by the victim, John Barnes, who was wearing a mask. The victim was accompanied by at least one other person and possibly as many as three others. As they approached the defendant, they said, "Run it" or "Run it up," meaning that they wanted the defendant to give up what he had. The victim was displaying a gun. The defendant clenched his fist and yelled something in Spanish to a woman who was looking out of a third floor window of building five. The defendant surrendered his car keys from his pocket and left the scene. The victim entered the defendant's car and prepared to drive away. The defendant went behind building five, where a young Hispanic female, who had exited that building, threw him an AK-47 rifle. The defendant then ran back with this weapon and began firing at his automobile as the victim drove it away. The defendant fired twenty-two armor piercing bullets in an automatic manner, and nineteen entered the car. The car struck a utility pole and the victim died from multiple gunshot wounds, all of which went from the back to the front of his body except for wounds to

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

his lower legs, which went across his legs from right to left.

I

The defendant first claims that the evidence presented was insufficient to prove that he had the requisite intent to cause the death of the victim. We disagree.

"In reviewing the sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993). The specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. General Statutes § 53a-3 (11) . . . . *State* v. *Raguseo*, 225 Conn. 114, 120, 622 A.2d 519 (1993). Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. *State* v. *Greenfield*, supra, 77. Therefore, intent is often inferred from conduct; id., 76; and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. *State* v. *Raguseo*, supra, 119. This does not require that each subordinate conclusion established by or inferred from evidence, or even from other inferences, be proved beyond a reasonable doubt; *State* v. *Crafts*, 226 Conn. 237, 244, 627 A.2d 877 (1993); because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. Id. Nevertheless, because intent to cause the death of a person is an element of the crime; *State* v. *Raguseo*, supra, 120; that intent must be proven beyond a reasonable doubt. *Pat-*

*terson* v. *New York*, 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Furthermore, [i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . . *State* v. *Raguseo,* supra, 120." (Internal quotation marks omitted.) *State* v. *Sivri,* 231 Conn. 115, 126–27, 646 A.2d 169 (1994).

After a careful review of the evidence adduced at trial, we conclude that the evidence presented and the reasonable inferences drawn therefrom are sufficient to support the jury's finding that the defendant had the intent to kill the victim. The jury could reasonably have inferred the requisite intent from the facts that the defendant left the area to retrieve his weapon and returned to shoot the victim. See *State* v. *Tomasko,* 238 Conn. 253, 259, 681 A.2d 922 (1996). The defendant made preparation for the shooting when he called something in Spanish to a woman in the third floor apartment of building five, and was shortly thereafter handed an AK-47 by a Hispanic female who came out of that same building. The jury also had evidence before it of the specific type of weapon used, that it was used in its automatic rather than semi-automatic mode, the type of bullets used, the number of shots fired, and the type of wounds inflicted on the victim. See *State* v. *Raguseo,* supra, 225 Conn. 120. The jury was also free to infer an intent to kill from the defendant's failure to assist the victim after the shooting; see *State* v. *Tomasko,* supra, 259; or from his failure to summon medical assistance. See *State* v. *Sivri,* supra, 231 Conn. 129. The defendant did not call for medical assistance for the victim, or even check the victim's condition in his car, but rather went to his aunt's apartment on the third floor in building five to call his attorney. We conclude that the cumulative effect of the evidence construed in

the light most favorable to sustaining the verdict was sufficient to allow the jury to find beyond a reasonable doubt that the defendant intended to kill the victim.

## II

The defendant next contends that the state failed to disprove beyond a reasonable doubt that, at the time he fired the weapon, he was acting in self-defense. The defendant argues that "[g]iven that the state was not disputing that the defendant was the victim of an armed robbery preceding the shooting, the only reasonable and logical theory upon which the jury could have rejected the defense of justification, was if they found that the defendant had safely retreated but then returned with a weapon." The defendant concedes that the state presented two witnesses who observed the defendant leave the area, run around building five, and return again to the area, armed with the AK-47, where he had been confronted by the victim. The defendant, however, questions their credibility, because he claims that there were inconsistencies in the state's case. The defendant's argument implicitly admits that the evidence would be sufficient if it were credible. While the defendant is free to argue, as he does, that the "[witnesses'] testimony can easily be dismissed as incredible," it is neither his function, nor ours, to assess the credibility of the witnesses or the weight to be given their testimony. See *State* v. *Fullard*, 5 Conn. App. 338, 342, 497 A.2d 1041 (1985).

We do not agree that the state failed to present credible evidence that affirmatively established that the defendant successfully retreated. The evidence was sufficient to prove beyond a reasonable doubt that the defendant was not acting in self-defense.

## III

The defendant also claims that the prosecutor's comments during closing argument were improper, and

thereby violated his rights to a fair trial, to present a defense and to due process of law. We are unpersuaded.

During his closing argument, the prosecutor misstated that a defense witness had reviewed the defendant's notes prior to testifying. The witness had actually testified that he had spoken to the defendant's attorney two weeks after the shooting, and, that, before testifying, he had reviewed the notes made at that meeting. The defendant objected to this comment.[3] After the jury returned its verdict, but prior to the imposition of sentence, the defendant filed written motions for a new trial and judgment of acquittal claiming this alleged improper comment as ground for his request. The court denied these motions.

Our review of the record discloses that the misstatement was not repeated and was a relatively brief part of the state's total argument. There is no claim that this single misstatement was made in bad faith.[4] Further, the trial court in its final instructions reminded the members of the jury that it was their recollection of the evidence that should have weight in their deliberations and not what counsel said in final argument, which differed from that recollection.

While it is possible for prosecutorial misconduct to occur in the course of closing argument; *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987); such alleged conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process in order to deprive the defendant of his constitutional right to a fair trial. *State* v. *Atkinson*, 235 Conn. 748, 768, 670 A.2d 276 (1996). The fairness of the

---

[3] The defendant, through counsel, asked that the jury be excused at this point during the state's rebuttal argument, but the trial court denied the request and instructed the prosecutor to complete his argument.

[4] The prosecutor apologized for his error based on his misunderstanding of the witness' testimony.

trial and not the culpability of the prosecutor is our standard. We look to the propriety of the challenged remark and, if the statement was improper, to whether it caused substantial prejudice to the defendant. *State v. Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989).

Our review of the record discloses that the misstatement did not cause substantial prejudice to the defendant. It was neither egregious nor intentional. If the defendant suffered any prejudice it was minimal, and the sanction of reversal is inappropriate.

The judgment is affirmed.

In this opinion the other judges concurred.