State *v.* Parris

## STATE OF CONNECTICUT *v.* ROBERT PARRIS
## (SC 20837)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of murder and various firearm offenses in connection with the shooting death of the victim, the defendant appealed to this court. During an interview with the police, the defendant confessed to shooting the victim and discussed in detail his prior struggle with homelessness and certain issues that he had with his stepmother and the victim, who was his next-door neighbor. The defendant expressed his belief that his stepmother had been scheming to prevent him from holding a job, finding housing, and maintaining relationships, and that she and the victim had been conspiring against him. At trial, the defendant asserted the defense of extreme emotional disturbance with respect to the murder charge, which the jury rejected. On appeal to this court, the defendant claimed, inter alia, that multiple instances of impropriety during the prosecutors' closing and rebuttal arguments deprived him of his due process right to a fair trial. *Held*:

The prosecutors committed impropriety during closing and rebuttal arguments by repeatedly misstating the law on the defendant's extreme emotional disturbance defense, and, because that impropriety deprived the defendant of his due process right to a fair trial, this court reversed the defendant's murder conviction and remanded the case for a new trial on that charge.

With respect to the prosecutors' comments during closing and rebuttal arguments that the defendant's state of mind "[did not] matter" with respect to whether he actually believed the circumstances regarding his stepmother, the extreme emotional disturbance defense embraces a standard that is subjective as to the defendant's belief and that requires a jury, in determining the reasonableness of the explanation or excuse for the disturbance, to consider the circumstances as the defendant believed them to be.

Consequently, the defendant's subjective state of mind was an important component to his extreme emotional disturbance defense, and any argument by the prosecutors to the contrary was a clear misstatement of the law.

With respect to one of the prosecutor's comments during rebuttal argument that the defendant's extreme emotional disturbance defense was unreasonable and inapplicable because the defendant's stepmother, and not the victim, was the source of the defendant's purported disturbance, and that the jury should consider whether targeting the victim, as opposed to his stepmother, was a reasonable reaction to the disturbance the defendant had allegedly experienced, those comments incorrectly suggested that there must be a logical nexus between the disturbance and the murder victim,

State *v.* Parris

and that the jury must consider whether it was reasonable for the defendant to have killed the specific victim as a result of the disturbance, when, instead, the extreme emotional disturbance defense asks whether there was a reasonable explanation or excuse for the disturbance itself rather than the criminal act or the choice of victim.

The use of hypotheticals by one of the prosecutors during rebuttal argument in claiming that the defendant's situation, as he believed it to be, was not a reasonable excuse or explanation for his actions was improper.

The introduction of the hypotheticals incorrectly framed the reasonableness inquiry of the extreme emotion disturbance defense, the hypotheticals misled the jury as to the analysis it was required to undertake, each hypothetical provided limited factual information, which tended to cause the jury to consider the hypothetical in a vacuum rather than in the appropriate context, and the fact that the misleading use of hypotheticals occurred during rebuttal argument was significant because the defense never had an opportunity to correct the misconceptions the prosecutor created.

There was a reasonable likelihood that the jury's verdict on the murder charge would have been different in the absence of the impropriety.

The defense did not invite the impropriety, the impropriety was central to a critical issue in the case, namely, the defendant's state of mind, and the prosecutors' misstatements of the law regarding the defendant's extreme emotional disturbance defense was inexcusable such that defense counsel's failure to object more strenuously during the trial did not significantly undermine the defendant's due process claim.

Moreover, although the improper comments did not occur throughout the trial but only during closing and rebuttal arguments, most of the improper comments occurred during rebuttal argument, which was particularly troubling insofar as defense counsel had no opportunity to respond, and whatever curative instructions the trial court did provide, even when considered with the court's accurate instruction on the extreme emotional disturbance defense, did not eliminate the prejudicial impact of the impropriety in light of the challenging legal concepts involved in an evaluation of such a defense.

The trial court did not abuse its discretion in admitting into evidence the entirety of the defendant's statement to the police without redacting those portions in which the defendant used homophobic slurs.

The entire interview was relevant to the defendant's extreme emotional disturbance defense insofar as it gave the jury context to determine whether he had satisfied the first element of that defense, namely, whether he had committed the murder under the influence of an extreme emotional disturbance.

Furthermore, although the use of slurs is inherently prejudicial and can incite strong feelings in jurors, the admission of the slurs was not more

State *v.* Parris

prejudicial than probative because the defendant's choice of language and how frequently he used each slur aided the jurors in determining if he was suffering from extreme emotional disturbance or whether the disturbance was contrived, particularly in light of the trial court's instruction that the derogatory language in the defendant's statement was being offered for the limited purpose of demonstrating the defendant's emotional state and that the jurors were not to punish the defendant for using such language.

(*Two justices concurring in part and dissenting in part in one opinion*)

Argued April 14—officially released July 29, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of murder, criminal possession of a firearm, criminal possession of a pistol or revolver, and carrying a pistol or revolver without a permit, brought to the Superior Court in the judicial district of New Haven, where the charges of murder, criminal possession of a firearm, and carrying a pistol or revolver without a permit were tried to the jury before *Alander, J.*; verdict of guilty; thereafter, the charge of criminal possession of a pistol or revolver was tried to the court, *Alander, J.*; finding of guilty; subsequently, the court, *Alander, J.*, rendered judgment of guilty in accordance with the verdict and the finding, from which the defendant appealed to this court. *Reversed in part*; *new trial*.

*Erica A. Barber*, assistant public defender, with whom, on the brief, were *Spencer Buckley* and *Lauren Klobutcher*, certified legal interns, for the appellant (defendant).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Melissa Holmes*, assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. A jury found the defendant, Robert Parris, guilty of, among other offenses, murder in violation of

State *v.* Parris

General Statutes § 53a-54a (a), for shooting and killing the victim, Michael Rosario. The defendant appeals from the judgment of the trial court, claiming that he is entitled to a new trial because (1) multiple instances of prosecutorial impropriety during the state's closing and rebuttal arguments[1] deprived him of his right to a fair trial, and (2) the trial court abused its discretion in admitting portions of his statement to the police that included homophobic slurs. We agree with the defendant that there were multiple instances of prosecutorial impropriety that deprived him of a fair trial but disagree with him that the trial court abused its discretion in admitting his entire statement to the police. Because the defendant's due process right to a fair trial was violated, we reverse the judgment of the trial court as to the defendant's murder conviction and remand the case for a new trial on that charge.

The jury reasonably could have found the following facts. The defendant, who had been experiencing homelessness for more than one decade, secured housing through an assistance program. The victim, who was the superintendent of the building where the defendant lived, and his two children lived next door to the defendant. The victim and the defendant had a tumultuous relationship.[2]

---

[1] Melissa Holmes, assistant state's attorney, presented the state's closing argument, and John P. Doyle, Jr., state's attorney, presented its rebuttal argument. For purposes of simplicity, we refer to them collectively as the prosecutors and individually as the prosecutor, where appropriate.

[2] The defendant is a registered sex offender. Another resident of the building testified that the victim would occasionally say "disrespectful things" about sex offenders and that he saw the victim harass the defendant about the fact that he was a sex offender. The victim's daughter testified that there was hostility between the victim and the defendant.

The defendant also told the police and others that he believed that the victim was conspiring with his stepmother to prevent him from maintaining a job and relationships. Roughly seven months prior to killing the victim, in May, 2019, the defendant contacted the property manager, alleging that the victim and the defendant's stepmother were conspiring against him and that he was "going to kill that piece of shit." The property manager then forwarded the message to the defendant's case manager at the housing

State *v.* Parris

On the morning of December 19, 2019, the victim's daughter, who was home alone in the apartment she shared with her brother and the victim, heard the defendant pacing back and forth in the hallway outside their apartment and talking to himself.[3] As the day progressed, the defendant's voice became louder, he sounded upset, and he said something about "a small member and a small tommy gun . . . ."[4] The defendant's odd behavior continued for three to four hours. As the defendant's behavior became "more chaotic," the victim's daughter called the victim to tell him that she was afraid to leave the apartment until he got home. When the victim's son returned to the apartment a little before 4 p.m., the defendant was still in the hallway, although he had stopped speaking so loudly. The victim's daughter eventually heard the victim's footsteps and his key make contact with their apartment door, but she heard no voices in the hallway. She then heard a loud thud, which she described as "a drop of a body," and, when she opened the door, she discovered the victim lying on the floor. Another resident called 911. The defendant, who was in the hallway, stepped over the victim's body and left the building. The victim's daughter then noticed that the victim had a gunshot wound to the head, which had caused his death.

On December 20, 2019, the morning after the homicide, the defendant turned himself in to the New Haven

assistance program, who then spoke to the defendant. The defendant did not suffer any consequences for making the threat.

[3] On the morning of the shooting, the defendant showed another resident of the building a small handgun he was carrying. The resident testified that the defendant had hit "a breaking point because [the conflict between the defendant and the victim had] been going on for a couple years." The resident had told the defendant to "just let it go, [to] let it be," and attempted to take the gun from the defendant. The defendant, however, refused to hand him the gun.

[4] The victim's daughter told the police after the shooting that the victim would mock the size of the defendant's penis, and she testified that she took the defendant's "small member" and "small tommy gun" statement as referring to his penis.

State *v.* Parris

Police Department. He consented to an interview with two detectives, which lasted approximately three hours. During the interview, the defendant confessed to shooting the victim with a small handgun. He stated that, after the homicide, he walked to a nearby cemetery where he had once worked, discarding the gun along the way.[5] He also discussed his struggles with homelessness, his stepmother,[6] and the victim.

The state charged the defendant with murder, criminal possession of a firearm, carrying a pistol or revolver without a permit, and criminal possession of a pistol or revolver while subject to a restraining order. Prior to trial, the defendant filed a notice of his intent to rely on the affirmative defense of extreme emotional disturbance with respect to the murder charge, which, if accepted by the jury, would result in the defendant's conviction of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2) instead of murder.[7] Throughout trial and closing argument, defense counsel focused on the defense of extreme emotional disturbance, discussing the defendant's behavior during the hours leading up to the shooting, the conflict

_____

[5] The gun was never recovered.

[6] The defendant discussed at length his relationship with his stepmother, whom he claimed had prevented him from maintaining a job, finding housing, and maintaining relationships. Among other things, he claimed that his stepmother had approached him "with her eyes glowing yellow" while he was once parked at a cemetery. He additionally claimed that his stepmother had recorded him performing oral sex on another man and would show the recording to others. He also insisted that his stepmother had frequently visited his building and had broken into his apartment with the victim.

Police officers, however, could not find any evidence that the defendant's stepmother spent any time at the defendant's apartment or had a relationship with the victim or any of the defendant's employers. The defendant's stepmother testified that she had last seen him in either 1998 or 1999, and that she had not initiated contact with him in any way since then. She additionally testified that she had not done anything to interfere with his housing, employment, or relationships, and that she had never met the victim.

[7] The defendant has never disputed that he intentionally killed the victim, which he confessed to doing during his interview.

State *v.* Parris

between the defendant and the victim, the defendant's concerns about losing his housing, and the defendant's problems with his stepmother. The prosecutors argued, among other things, that the defendant had planned the victim's death and that his claim of extreme emotional disturbance was contrived.

The jury rejected the defendant's extreme emotional disturbance defense and found him guilty of three crimes, including murder.[8] He was sentenced to a total effective sentence of forty-five years of imprisonment. This appeal followed.

I

The defendant first claims that he is entitled to a new trial because the prosecutors committed numerous instances of impropriety during their closing and rebuttal arguments. Specifically, the defendant contends that the prosecutors acted improperly when they misstated the law regarding the extreme emotional disturbance defense, denigrated the defense, and invited the jury to engage in jury nullification. We conclude that the prosecutors committed impropriety by misstating the law regarding the extreme emotional disturbance defense and that doing so deprived the defendant of a fair trial.

"When considering a prosecutorial impropriety claim, the court engages in a two step process. We must determine (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived [the] defendant of his due process right to a fair trial. . . . It is the defendant's burden to satisfy both steps. . . . With respect to the second step, we must examine not only whether any individual impropriety deprived the defendant of his right to a fair trial, but also whether the cumulative effect of multiple improprieties . . .

---

[8] The defendant elected a court trial on the charge of criminal possession of a pistol or revolver while subject to a restraining order. The trial court found the defendant guilty of that charge.

352 Conn. 652 JULY, 2025 659

State *v.* Parris

deprived [him] of his . . . right to a fair trial. . . . To [do so], we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair . . . . We review the instances of impropriety in the context of the entire trial and not in a vacuum." (Citations omitted; internal quotation marks omitted.) *State* v. *Dabate*, 351 Conn. 428, 437, 331 A.3d 1159 (2025).

A

The following additional facts and procedural history are relevant to this claim. During the charging conference held prior to closing arguments, defense counsel requested a jury instruction on extreme emotional disturbance. Section 53a-54a (a) provides in relevant part: "[I]t shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

The prosecutor objected to the charge, arguing that there was "essentially no testimony as to what the defendant's state of mind was . . . specifically at the time of this incident . . . that [there was] no evidence from any expert witnesses . . . who ha[d] discussed specifically the defendant's mental state [or] any mental disease or defect that he may suffer from, and also [that there was] no one to speak to the reasonableness" of the defendant's explanation or excuse. In response, defense counsel argued that there was "a lot of evidence that supports all of the elements of the defense, both from

State *v.* Parris

observations of witnesses that day [who] testified . . . as well as the defendant's statement . . . to the police multiple times indicating what his state of mind was. As far as [there being] no expert witness testi[mony], [the defense is] not required to present an expert witness. . . . [W]e're not required to introduce expert testimony on reasonableness, either."

The trial court agreed to give an instruction on the extreme emotional disturbance defense, stating: "[The defendant], in his interview with the police, certainly talked about his mental state in general, both as it relates to [his] stepmother [and the victim]. There's evidence from [the victim's] daughter that he was talking to himself, pacing outside in the hallway immediately before the shooting, so I think there's sufficient evidence for this defense to go to the jury, [and] I am going to give an instruction on extreme emotional disturbance."

The court provided the parties with its proposed extreme emotional disturbance charge, which, as to the second element of the defense, provided in relevant part that "the reasonableness [of the defendant's explanation or excuse] is determined from the viewpoint of a person in the defendant's situation." The prosecutor requested that the charge be altered slightly so that it read "reasonableness . . . determined from the viewpoint of a *reasonable* person in the defendant's situation." (Emphasis added.) The trial court agreed with the prosecutor and reiterated that the defense involves "a reasonable person standard that has an objective part and a subjective part, and it's a reasonable person in the defendant's situation . . . ." The prosecutor did not otherwise object to the language of the extreme emotional disturbance charge.

During closing argument, after discussing the defendant's police interview, the prosecutor argued: "Now,

State *v.* Parris

remember . . . this is a confession to killing [the victim], and it's your recollection of this video that controls. But it's about [one-half] hour before [the defendant] even mentions [the victim], and that's not even by name. He just calls him the superintendent. . . . So, remember, when you're listening to argument and . . . the law on whether . . . you should consider the defendant's mental state and mitigate this . . . murder in any way, please remember the idea of reasonableness and *what a reasonable person would have done in the defendant's position. What is reasonable about killing* [*the victim*]? Frankly, [the defendant] didn't talk about [the victim] all that much. . . . [M]ostly, it was just him talking about his stepmother. *So, what makes sense . . . in this situation* [*about*] *killing* [*the victim*]?'' (Emphasis added.) The prosecutor continued: ''You heard from [the defendant's stepmother] herself. . . . Now, there's nothing in [the] evidence to tell you exactly what it was that the defendant believed, if he believed these things about his stepmother or if these were just convenient excuses to come up with after the fact, to really put all the blame on her. *The state's position* [*is that*] *it really doesn't matter whether he believed them* . . . . They clearly are being used as excuses in this interview to explain away and [to] justify what he did. And, again, when you consider that idea of *what a reasonable person would do in these circumstances*, the state would submit [that] there is nothing reasonable about the reaction that he had . . . .'' (Emphasis added.)

In response, defense counsel argued that the defendant acted under the influence of extreme emotional disturbance when he killed the victim. He explained that the ''extreme emotional disturbance [defense] does not require a provoking or a triggering event. It includes a homicide that is brought about by a significant mental trauma that caused the defendant to brood for a long

State *v.* Parris

period of time and then [to] react violently, seemingly without provocation. The homicidal act need not occur immediately after the cause or the causes of the defendant's extreme emotional disturbance. Rather, the disturbance may have simmered in the defendant's mind for a long period of time. So, it is not necessary that we, the defense, identify some sort of triggering event, something that happened [the] moment before [the victim] was shot.

* * *

"Now, [the defendant] has a long-standing belief that his stepmother had been doing certain things to him, including trying to keep him homeless for all those years, and whether that is true or not, I don't know. But, for the purpose of the extreme emotional disturbance defense, it doesn't matter. The important thing is [that the defendant] believed that she did it." Defense counsel continued: "Now, when the court instructs you later . . . on extreme emotional disturbance, you're going to hear that there has to be a reasonable explanation or excuse [for] the defendant's extreme emotional disturbance. And, to [find] that, you have to measure the view—from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be. In other words, put yourself in his shoes, view it from his situation as [he] believed things to be."

During rebuttal, the prosecutor argued: "[W]hen you determine [the extreme emotional disturbance] defense . . . pay very [close] attention to what the court instructs because, in determining the reasonableness of the defendant's explanation or excuse, you must measure that reasonableness from the viewpoint of a reasonable person in the defendant's situation. I disagree with [defense counsel] on it. It's not . . . reasonableness from the defendant's viewpoint. It's from a

State *v.* Parris

reasonable person in the situation the defendant is in. That is a very big distinction. Listen to what the court says, *because the determination you're going to have to make here is whether the defendant's conduct is reasonable based on what a reasonable person would do in the situation that he perceived himself to be in. And, ask yourself, would a reasonable person kill* [*the victim*]? *Why not the stepmother? Why not his employer? Why not the property manager? Why not the landlord? Why not his caretaker?*'' (Emphasis added.)

The prosecutor then presented hypotheticals for the jury to consider: "*So, ask yourself this as you consider the defendant's claimed defense, and think about the reasonable person in an everyday world and in an everyday society. Do you get to kill* [*your*] *employer because you got fired or disciplined? Do you get to murder your estranged spouse or loved one because there's an ongoing divorce or child custody battle that's been* [*playing*] *in the back of your mind for months or years to come? Do you get to kill a rival drug dealer, a gang member, because* [*he*] *cause*[*s*] *you stress by operating on your drug turf or* [*in*] *your drug area? Do you get to murder your high school or college basketball coach because* [*he is*] *conspiring with the team captain to sit you out for the next game? How about your principal if your teacher fails you in math? How about your neighbor because you protect your parking spot? It's assigned to you. It's got a number on it. And somebody decides that they want to park there, and it causes you distress. Would a reasonable person have an explanation for going out and putting a bullet in the back of somebody's head over that? What about your medical receptionist because you don't like the advice that you just got from the doctor you visited?*'' (Emphasis added.)

The prosecutor concluded rebuttal by playing part of the video of the defendant's interview, before stating:

State *v.* Parris

"[The defendant] wonders what it's going to be like to go to court with all this crap, [to] be able to explain everything about [his] stepmother, or [to] explain away [his] putting a bullet in the back of [the victim's] head. There's one thing [on which] the state would agree with the defendant, and you'll have to pardon my language for this, 'the distraught fucking madness. It is distraught fucking madness.' *It is* [*a*] *horrible thing that* [the defendant] *is going to use* [*the extreme emotional disturbance*] *defense to explain taking away the life of* [*the victim*]. On behalf of the state, I'd ask you not to do that." (Emphasis added.)

At the conclusion of arguments and outside the presence of the jury, defense counsel objected to the prosecutors' arguments, stating: "[T]he defense would object to a couple of things in the state's closing. First and foremost, I believe [that], at one point in time, it was stated that the measure of reasonableness is not from the defendant's shoes, it's from [the shoes of] a reasonably objective person. We would object to that. I would ask that something be said in the instructions . . . maybe along the lines of, 'you have heard from both attorneys or both sides about . . . what the standard is, and I'm going to give you the law, and you are to follow the law.' " The trial court agreed to "add something that says, 'both attorneys have addressed the law on extreme emotional disturbance. You are to follow my instructions, and, if what they said differs in any way, you need to follow what I say.' " Defense counsel thanked the court and indicated that there were no other issues on which he wanted to be heard.

In its general instructions to the jury, the trial court stated that, "[i]f what counsel said about the law differs from what I tell you, you will dismiss from your minds what they may have said to you." The court provided a similar instruction at the beginning of its charge on the defense of extreme emotional disturbance: "The

352 Conn. 652 JULY, 2025 665

State *v.* Parris

attorneys discussed that law with you during their closing arguments. If anything they said differs from what I say, you're to disregard what they said and follow my instructions to you on all issues of law, and particularly on the issue of extreme emotional disturbance.'' The court continued: ''[The extreme emotional disturbance defense] is an affirmative defense to the crime of murder that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be. The defendant has the burden of proving the defense . . . by a preponderance of the evidence. The state does not have the burden of disproving this defense. Extreme emotional disturbance is a mitigating circumstance [that] will reduce the crime of murder to manslaughter. A person charged with murder may raise this defense to lessen the charge for murder to manslaughter in the first degree. Should the defendant prove his affirmative defense of extreme emotional disturbance, you should [find] him [guilty] of the crime of manslaughter in the first degree with a firearm, rather than [guilty] of the crime of murder. The [defendant] . . . must prove by a preponderance of the evidence each of the following two essential elements to establish his defense of extreme emotional disturbance: (1) the defendant committed the offense under the influence of extreme emotional disturbance, and (2) there was a . . . reasonable explanation or excuse for his extreme emotional disturbance.

''The first essential element is that the defendant committed the offense under the influence of extreme emotional disturbance. . . . To establish this element, you must find (a) that the defendant was exposed to an extremely unusual and overwhelming state that is not

State *v.* Parris

mere annoyance or unhappiness, and (b) that the defendant had an extreme emotional reaction to it as a result of which there was a loss of self-control, and reason was overborne by extreme intense feeling, such as passion, anger, distress, grief, excessive agitation, or other similar emotions. You should consider whether the intensity of these feelings was such that the defendant's usual intellectual controls failed and the normal rational thinking for that individual no longer prevailed at the time of the act. A homicide influenced by an extreme emotional disturbance does not require a provoking or triggering event. . . . The homicidal act need not occur immediately after the cause or causes of the defendant's extreme emotional disturbance; nor is it required that the defendant have lost all ability to reason. . . . The second essential element is that there was a reasonable explanation or excuse for the defendant's extreme emotional disturbance. In determining the reasonableness of [the] defendant's explanation or excuse, you must measure the reasonableness from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be.''

On appeal, the defendant argues that the prosecutors misstated the law by improperly asserting that (1) the defendant's beliefs did not matter, (2) the reasonableness inquiry under § 53a-54a (a) focuses on whether the defendant's response to the extreme emotional disturbance was reasonable, and (3) the extreme emotional disturbance defense was unreasonable and, therefore, inapplicable if the victim was not the source of the extreme emotional disturbance. In response, the state claims that the prosecutors did not misstate the law at any point during closing and rebuttal arguments but, rather, properly challenged both the subjective and objective components of the affirmative defense. Specifically, the state argues that the challenged statements supported the prosecutors' arguments that the defen-

State *v.* Parris

dant had not acted under extreme emotional disturbance when he killed the victim and that the defendant had failed to satisfy "the objective standard that [his] reaction was that of a reasonable person under the circumstances as [he] believed them to be."

Connecticut appellate courts have consistently held that prosecutors are not permitted to misstate the law and that doing so typically constitutes prosecutorial impropriety. See, e.g., *State* v. *Courtney G.*, 339 Conn. 328, 356–58, 260 A.3d 1152 (2021) (prosecutor's misstatement of law governing reasonable doubt standard was improper); *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012) ("prosecutors are not permitted to misstate the law"); *State* v. *Albert D.*, 196 Conn. App. 155, 163–67, 229 A.3d 1176 (comments during rebuttal that explicitly misstated law were improper, even when intertwined with proper remarks relating to jury's role in assessing credibility), cert. denied, 335 Conn. 913, 229 A.3d 118 (2020); *State* v. *Houle*, 105 Conn. App. 813, 824, 940 A.2d 836 (2008) ("[a]lthough some leeway must be afforded to the advocates in offering arguments to the jury . . . we have never held that this principle permits a prosecutor to misstate the law" (citation omitted; internal quotation marks omitted)).

Accordingly, we must determine whether the prosecutors' comments misstated the requirements of the extreme emotional disturbance defense and whether any misstatement constituted prosecutorial impropriety that deprived the defendant of his due process right to a fair trial. "Section 53a-54a (a), in defining the crime of murder, excepts, as an affirmative defense, a homicide committed by a defendant who acts 'under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to

State *v.* Parris

be . . . .’ Under such circumstances, if a defendant intentionally causes the death of an individual, but does so under extreme emotional disturbance, the trier of fact may [find] the defendant [guilty] of manslaughter in the first degree in violation of . . . § 53a-55 (a) (2).’’ *State* v. *Person*, 236 Conn. 342, 345, 673 A.2d 463 (1996).

“Section 53a-54a describes the two elements of [the affirmative defense of extreme emotional disturbance]: (1) the defendant committed the offense under the influence of extreme emotional disturbance; and (2) there was a reasonable explanation or excuse for the defendant’s extreme emotional disturbance. . . . In an effort to [interpret] the meaning of the phrase extreme emotional disturbance . . . [this court has] enumerated understandable guidelines for instructing a jury in determining the presence or absence of that mental condition . . . but they are neither conclusive nor exclusive. [A]n extreme emotional disturbance is one [whereby] self-control and reason are overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions. . . . [A] homicide influenced by an extreme emotional disturbance [however] is not one [that] is necessarily committed in the hot blood state but rather can be one brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then [to] react violently, seemingly without provocation.’’ (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 351–52. “Thus, the statute sets forth a standard that is objective in its overview, but subjective as to the defendant’s belief.’’ *State* v. *Elliott*, 177 Conn. 1, 7, 411 A.2d 3 (1979). As to the objective element under the statute, we have explained that “the reasonable man yardstick is . . . used [only] to determine the reasonableness of the explanation or excuse of the action of the defendant from the viewpoint of a person in the defendant’s situation under the circumstances as

State *v.* Parris

the defendant believed them to be." (Internal quotation marks omitted.) *State* v. *Raguseo*, 225 Conn. 114, 127, 622 A.2d 519 (1993). In sum, the defendant must first prove by a preponderance of the evidence that he did in fact suffer from extreme emotional disturbance. The defendant then must prove by a preponderance of the evidence that his excuse or explanation for the disturbance was reasonable "from the viewpoint of a person in [his] situation under the circumstances as [he] believed them to be," regardless of whether the beliefs themselves were reasonable. General Statutes § 53a-54a (a).

After a review of the record, we conclude that the prosecutors' repeated misstatements of the law constitute impropriety.[9]

---

[9] The defendant additionally claims that the prosecutors' comments referring to the defendant's story as "contrived" and an "excuse" denigrated the defense and invited the jury to engage in nullification by conveying the idea to the jury that it should "not sanction a legal defense that condones the murder of another." The defendant also claims that the prosecutor further denigrated the defense by commenting that it would be a "horrible thing . . . [for the defendant] to use this type of defense to explain taking away the [victim's] life . . . ." We are not persuaded because the record does not compel the conclusion advanced by the defendant. Rather, the prosecutors' arguments can be understood as suggesting that the jury should not believe that the defendant suffered from extreme emotional disturbance and that, instead, he was fabricating the impact that various life events, real or perceived, had on his emotional state to justify killing the victim. Indeed, "when a prosecutor's potentially improper remarks are ambiguous, a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Felix R.*, 319 Conn. 1, 9, 124 A.3d 871 (2015). As such, there was nothing improper about such an argument. See, e.g., *State* v. *Grant*, 154 Conn. App. 293, 321, 112 A.3d 175 (2014) ("The occasional use of rhetorical devices is simply fair argument. . . . [S]ome use of sarcastic and informal language, when intended to forcefully criticize a defense theory on the permissible bases of the evidence and the common sense of the jury, is not necessarily improper." (Citation omitted; internal quotation marks omitted.)), cert. denied, 315 Conn. 928, 109 A.3d 923 (2015).

State *v.* Parris

First, the prosecutors misstated the law when they argued to the jury without qualification that the defendant's state of mind "[did not] matter." During closing and rebuttal arguments, the prosecutors stated that the "pressures . . . of one's life are no excuse for taking the life of another individual" and that, to the state, "it really doesn't matter whether [the defendant] believed [certain things about his stepmother]." These arguments misstate the law because, as we discussed previously, the extreme emotional disturbance defense considers the reasonableness of the explanation or excuse for the disturbance "*from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . .*" (Emphasis added; internal quotation marks omitted.) *State* v. *Person,* supra, 236 Conn. 345; accord General Statutes § 53a-54a (a). Accordingly, telling the jury that the defendant's subjective belief does not matter, and that the pressures of one's life are not an excuse for taking the life of another, is contrary to an explicit element of § 53a-54a (a), which sets forth a standard that is "*subjective as to the defendant's belief*"; (emphasis added) *State* v. *Elliott,* supra, 177 Conn. 7; and which requires the jury to consider the circumstances as the defendant believed them to be. Indeed, the defendant's subjective state of mind is an important component to the extreme emotional disturbance defense, and any argument to the contrary is a clear misstatement of the law.[10]

___

[10] On appeal, the state argues that the statement "it really doesn't matter" whether the defendant believed the circumstances about his stepmother was intended to convey to the jury that any such belief would not constitute a reasonable excuse. That argument is not supported by the record. The prosecutor instead stated that the defendant's purported beliefs were "being used as *excuses* in this interview to explain away and [to] justify what he did. And, again, when you consider that idea of what a reasonable person would do in these circumstances, the state would submit [that] there is nothing *reasonable about the reaction that he had*, and, in fact, he told you exactly what he was reacting to." (Emphasis added.) The prosecutor thus argued that the jury should not believe that the defendant suffered from

State *v.* Parris

Second, the prosecutor misstated and mischaracterized the law when he argued during rebuttal that the defense was unreasonable and inapplicable because the victim was not the main provocateur of the defendant's distress and that, instead, the jury should assess whether targeting the victim, as opposed to someone else, was a reasonable reaction to any disturbance that the defendant had suffered. Although the state argues that the prosecutor was not suggesting to the jury that it should consider whether the murder of this specific victim was reasonable but, rather, was suggesting that the defendant failed to establish a reasonable explanation for his overwhelming stress, it appears to us that the prosecutor's various references to whether it was reasonable to kill the victim, as opposed to his stepmother, reflects a fundamental misunderstanding of the affirmative defense. The prosecutor's comments regarding the victim can only be understood as asking the jury to consider whether there was a nexus between the defendant's disturbance and his conduct directed toward the victim, that is, whether it was reasonable for the defendant to kill this victim as a result of the disturbance. There are two problems with that argument. To begin, no such nexus is required to establish an extreme emotional disturbance defense. Instead, the assessment of reasonableness is made with respect to the excuse for the extreme emotional disturbance itself, not the criminal act or the choice of victim. Indeed, § 53a-54a (a) requires that the jury determine whether the defendant acted under the influence of extreme emotional distur-

extreme emotional disturbance or that, even if he did, the jury should reject the defense because the reaction he had, i.e., killing the victim, was not a reasonable one. As we discussed in this opinion, whether the defendant's reaction to the extreme emotional disturbance is reasonable is irrelevant because the second element of the defense is concerned with whether the explanation or excuse for the disturbance was reasonable. In order to resolve this element, the jury must consider what the defendant believed at the time, meaning what he believed really does matter.

State *v.* Parris

bance and whether the disturbance itself, as opposed to the criminal act, had a reasonable explanation or excuse. In addition, neither the statute nor the relevant case law suggests that the choice of the murder victim must "[make] sense" for the extreme emotional disturbance defense to apply. Our case law makes clear that there is no such requirement. See *State* v. *Kaddah*, 250 Conn. 563, 580, 736 A.2d 902 (1999) ("[t]he [trial court's] reference to an 'event' as a cause and the long, *simmering* nature of such [an emotional] disturbance . . . removed any possibility that the jury mistakenly would believe that the victim, rather than the circumstances, contemporaneously must have caused the defendant's disturbance for the defense of extreme emotional disturbance to apply" (emphasis in original)); see also *People* v. *Casassa*, 49 N.Y.2d 668, 679 n.2, 404 N.E.2d 1310, 427 N.Y.S.2d 769 ("[w]e emphasize that [the extreme emotional disturbance] test is to be applied to determine whether [the] defendant's emotional disturbance, and not the act of killing, was supported by a reasonable explanation or excuse"), cert. denied, 449 U.S. 842, 101 S. Ct. 122, 66 L. Ed. 2d 50 (1980). In the present case, by asking the jury to consider whether the victim of the murder was a reasonable target when determining whether the defendant met the statutory requirements of an extreme emotional disturbance defense, the prosecutor suggested to the jury that the defendant was required to prove a causal connection that the law simply does not require. In addition, by focusing the reasonableness inquiry on the defendant's reaction to the disturbance (i.e., killing the victim) rather than the disturbance itself, the prosecutor improperly reframed the reasonableness question. By doing so, the prosecutor misstated the law to a significant degree.

Third, the prosecutor's use of hypotheticals during rebuttal to argue that the defendant's situation, as he believed it to be, was not a reasonable excuse or expla-

State *v.* Parris

nation for his actions was improper for several reasons. The state claims that the prosecutor's hypotheticals were responsive to defense counsel's arguments that the defendant had a reasonable explanation or excuse for his extreme emotional disturbance and were simply rhetorical devices to demonstrate why the defendant had failed to show a reasonable explanation for his actions from the viewpoint of a reasonable person. We are not persuaded.

As an initial matter, the prosecutor's introduction to the hypotheticals incorrectly framed the reasonableness inquiry of the defense. He stated: "So, ask yourself this as you consider the defendant's claimed defense, and think about the reasonable person in an everyday world and in an everyday society." This statement improperly focused the jury on the reasonable person standard without first telling the jury that it must put that reasonable person in the defendant's situation, believing what he believed.

The hypotheticals themselves also misled the jury as to the analysis it was required to perform. The prosecutor asked a series of questions aimed at establishing that the defense is not available to the reasonable person acting out of anger or annoyance. To the extent that the prosecutor was focused on the first element of the defense, which is not at all clear from the language used, we do not credit the suggestion that he was arguing that the evidence established only that the defendant acted out of annoyance or unhappiness, rather than as a result of extreme emotional disturbance. The fact remains that it was legally impermissible to ask the jury to consider this particular issue from the perspective of the reasonable person. And, to the extent that the prosecutor was focused on the second element of the defense, each hypothetical personalized the inquiry by asking the jury, "[d]o *you* . . . ?" (Emphasis added.) The question, however, is not what

State *v.* Parris

each individual juror would do or what a reasonable person would do. Thus, each hypothetical invited the jury to disregard the defendant's subjective understanding of the circumstances. The hypotheticals also suggested to the jury that, if it accepted the extreme emotional disturbance defense, it would be exonerating the defendant. Each question asked the jury "[d]o you get to murder" or "[d]o you get to kill" someone in a particular circumstance, as if the defendant was seeking exoneration for the homicide. Of course, the extreme emotional disturbance defense asks no such question under either the first or second element. The defendant did not argue that the disturbance he claimed to have suffered justified his shooting of the victim, and there was no dispute that the killing was intentional and inexcusable despite his beliefs. The only question was whether his level of culpability was diminished due to his claimed extreme emotional disturbance. The prosecutor's use of the hypothetical questions to suggest that the answer to whether you get to kill or murder someone under the factual scenario presented was a categorical "no" served to distort the much more nuanced inquiry the jury was required to undertake.

Each hypothetical question also provided limited factual information that would lead the jury to consider the hypothetical in a vacuum and not in the appropriate context. As we previously discussed in this opinion, context is crucial when it comes to the extreme emotional disturbance defense. In fact, we have recognized the viability of the defense in cases involving facts that are remarkably similar to those in the hypotheticals used by the prosecutor in the present case.[11] For example, the prosecutor asked whether you could kill someone over a parking spot dispute. In *State* v. *Raguseo*, supra, 225 Conn. 114, the defendant invoked the extreme emotional disturbance defense after he had

---

[11] See footnote 14 of this opinion.

State *v.* Parris

stabbed and killed the victim because "he was tired of people parking in his parking space." (Internal quotation marks omitted.) Id., 118. On appeal, "[t]he state concede[d] that there was substantial evidence that the defendant [had] acted under an extreme emotional disturbance. The defendant, on the other hand, also concede[d] that there was some evidence suggesting that he [had] not act[ed] under an extreme emotional disturbance." Id., 122–23. "In light of these concessions," we concluded that it was for the jury to determine whether the defendant proved the defense. Id., 123. Nevertheless, we recognized that it was entirely possible for a jury to conclude that a killing resulting from a dispute over a parking space could be the result of an extreme emotional disturbance. See id., 123–24. By suggesting otherwise, the prosecutor in the present case misled the jury. The fact that the misleading use of the hypotheticals occurred during rebuttal argument is also significant because the defense never had an opportunity to correct the misconceptions the prosecutor created. In sum, by asking the jurors to rely on their common sense and life experiences through analogizing to factual scenarios that did not relate to the facts of the case before them, the prosecutors distorted the analysis regarding the "situation under the circumstances as the defendant believed them to be" and improperly provided the jury with incomplete hypotheticals that failed to differentiate between the objective and subjective inquiries under § 53a-54a (a). Accordingly, we conclude that the prosecutors committed impropriety when they repeatedly misstated the law regarding the extreme emotional disturbance defense.[12]

---

[12] Before we turn to the question of whether the improprieties in the present case deprived the defendant of a fair trial, we pause briefly to admonish prosecutors and defense counsel alike that they must avoid imprecise and paraphrased recitations of the requirements of the extreme emotional disturbance affirmative defense. Cf. *State* v. *Courtney G.*, supra, 339 Conn. 358 ("[w]e take this opportunity to admonish prosecutors and defense counsel alike that they generally should avoid paraphrasing the reasonable doubt standard"). Using such imprecise or paraphrased language runs the

State *v.* Parris

B

Having concluded that prosecutorial impropriety occurred, we must now consider whether the prosecutors' misstatements of the law deprived the defendant of his due process right to a fair trial.

"To prove prosecutorial [impropriety], the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process. . . . In weighing the significance of an instance of prosecutorial impropriety, a reviewing court must consider the entire context of the trial, and [t]he question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different [in the absence of] the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Hinds*, 344 Conn. 541, 563, 280 A.3d 446 (2022).

To determine whether the impropriety deprived the defendant of a fair trial, this court applies the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). "These factors include [1] the extent to which the [impropriety] was invited by defense conduct or argument, [2] the severity of the [impropriety], [3] the frequency of the [impropriety], [4] the centrality of the [impropriety] to the critical issues in the case,

_____

risk of confusing or misleading the jury on what is already a complex and nuanced defense. See, e.g., *State* v. *Raguseo*, supra, 225 Conn. 126 ("[t]he jury asked for reinstruction on [the extreme emotional disturbance] affirmative defense on three separate occasions"). If prosecutors or defense counsel decide to delve into the legal requirements of the extreme emotional disturbance defense in their closing arguments, they are obligated to ensure that their arguments accurately describe the nuances of that defense or to utilize the trial court's previously approved jury instructions on the defense.

352 Conn. 652 JULY, 2025 677

State *v.* Parris

[5] the strength of the curative measures adopted, and
[6] the strength of the state's case.'' (Internal quotation
marks omitted.) *State* v. *Sinclair*, 332 Conn. 204, 237,
210 A.3d 509 (2019).

In the present case, it is undisputed that the impropri-
ety was not invited by the defendant's simply raising
the extreme emotional disturbance defense, particu-
larly because defense counsel clearly and accurately
stated the reasonableness inquiry during his closing
argument. In addition, the state concedes that any
impropriety was central to the critical issue in the case,
namely, the defendant's state of mind and his under-
standing of the circumstances. Accordingly, the first
and fourth factors favor the defendant.

As to the severity of the impropriety, we first consider
whether defense counsel objected to the remark,
requested curative instructions, or moved for a mistrial,
and then ''whether the impropriety was blatantly egre-
gious or inexcusable.'' *State* v. *Fauci*, 282 Conn. 23, 51,
917 A.2d 978 (2007). Here, defense counsel, after the
prosecutor's rebuttal argument and outside the pres-
ence of the jury, objected on the ground that the prose-
cutors, ''at one point in time . . . stated that the
measure of reasonableness is not from the defendant's
shoes [but] from a reasonably objective person,''[13] and

[13] The state argues that the defendant's appellate claims are ''mostly unpre-
served'' because they exceed the single objection that was raised during
trial. However, a defendant need not preserve claims of prosecutorial impro-
priety for this court to review them. See, e.g., *State* v. *Jordan*, 314 Conn.
89, 114, 101 A.3d 179 (2014) (''a defendant need not object to prosecutorial
impropriety to preserve such a claim for review''). Instead, whether defense
counsel makes a timely objection is considered in our *Williams* analysis
because, if defense counsel does not object, we presume that ''he . . .
does not view the alleged impropriety as prejudicial enough to jeopardize
seriously the defendant's right to a fair trial.'' (Internal quotation marks
omitted.) Id. We previously have stated that ''counsel's failure to object at
trial, while not by itself *fatal* to a defendant's claim, frequently will indicate
on appellate review that the challenged comments do not rise to the magni-
tude of constitutional error . . . .'' (Emphasis in original; internal quotation
marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 576, 849 A.2d 626 (2004).

State *v.* Parris

requested a curative instruction "along the lines of, 'you have heard from both attorneys or both sides about . . . what the standard is, and I'm going to give you the law, and you are to follow the law.' '' Defense counsel did not move for a mistrial.

Nevertheless, we conclude that defense counsel's somewhat muted response to the prosecutors' improper remarks was sufficient. The impropriety, moreover, was inexcusable. The defendant's only defense at trial was extreme emotional disturbance, and the entire trial focused on whether the defendant satisfied the statutory requirements of the defense. We expect prosecutors to be fully aware of the law when arguing to a jury. That is particularly true when, as in the present case, the court has given counsel its proposed charge, which accurately set forth the law on extreme emotional disturbance. Furthermore, the court's charge was in no way novel, as it was taken almost verbatim from the Judicial Branch's model criminal jury instructions. See Connecticut Criminal Jury Instructions 5.2-1, available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited July 24, 2025). The record also reflects that defense counsel had no difficulty understanding the elements of the defense or the court's charge when he correctly explained the law to the jury.

Furthermore, the state's argument on appeal that the prosecutors should be afforded leeway because "closing arguments often have a rough and tumble quality about them" rings hollow in the present case. *State* v. *Tate*, 85 Conn. App. 365, 370, 857 A.2d 394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). Whether the defendant proved his extreme emotional disturbance defense was the central issue at trial, and the court's proposed charge was known to counsel by the time of argument. The prosecutors had more than an adequate opportunity to carefully craft their closing remarks so as not to mislead the jury. There also was nothing in defense

State *v.* Parris

counsel's closing argument that would have caught the prosecutor by surprise or caused him to deviate from his intended remarks during his rebuttal. To the contrary, as we previously noted, the state does not claim on appeal that any impropriety was invited by defense counsel. Furthermore, although the prosecutor briefly referenced defense counsel's closing argument during his rebuttal argument, the rebuttal largely appears to us to have been thought-out and planned, as reflected by the prosecutor's extensive use of detailed hypotheticals, as well as his coordinated use of the defendant's video-recorded statement.

We also are not persuaded by the state's argument that the prosecutor's use of the hypotheticals should be excused because prosecutors do not know what defense counsel is going to argue during summation, such that they must be able to make their closing arguments during "the heat of argument." As we previously noted, the prosecutor's rebuttal included only brief references to defense counsel's closing. In addition, defense counsel did not use any hypotheticals in his closing argument. Indeed, it appears to us that the prosecutor chose hypotheticals from cases in which the extreme emotional disturbance defense had been discussed and even recognized as a viable defense.[14] Therefore, we cannot dismiss the hypotheticals as unplanned misstatements made during the heat of argument. Accordingly, any misstatement of the law regarding the defense was inexcusable such that defense counsel's failure to object to it more strenuously during trial does

---

[14] See, e.g., *State* v. *Aviles*, 277 Conn. 281, 284–85, 307–309, 891 A.2d 935 (defendant raised extreme emotional disturbance as defense to murder of victim during drug sale dispute), cert. denied, 549 U.S. 840, 127 S. Ct. 108, 166 L. Ed. 2d 69 (2006); *State* v. *Raguseo*, supra, 225 Conn. 118–19, 121–24 (defendant raised extreme emotional disturbance as defense to murder of victim over parking space dispute); *State* v. *Elliott*, 177 Conn. 1, 2–3, 411 A.2d 3 (1979) (defendant killed his brother and claimed extreme emotional disturbance arising out of, among other concerns, child custody problems).

State *v.* Parris

not significantly undermine the defendant's due process claim.

To be sure, the prosecutors did reference and articulate the correct legal standard for an extreme emotional disturbance defense at some points during their closing and rebuttal arguments.[15] Given the complexity of the subjective/objective test that the jury was required to apply, however, we conclude that the prosecutors' misstatements of the law were not cured by any correct statements of the law the prosecutors made during their arguments, particularly when the prosecutors' misstatements were inexcusable. See *State* v. *Albert D.*, supra, 196 Conn. App. 167 ("[w]hile the [explicit misstatements of the law] may have been intertwined with proper remarks relating to the jury's role in assessing credibility, we are persuaded that the jury likely could have misunderstood the reason for the experts' general testimony"). To the contrary, any correct statement of the law was overshadowed by the various misstatements we discussed previously.

We next examine the third *Williams* factor, the frequency of the impropriety. We acknowledge that the

_____

[15] For example, during rebuttal argument, the prosecutor urged the jury, in considering the extreme emotional disturbance defense, to "pay very [close] attention to what the court instructs because, in determining the reasonableness of the defendant's explanation or excuse, [it] must measure that reasonableness from the viewpoint of a reasonable person in the defendant's situation." At other times, though, the prosecutors, during both closing and rebuttal arguments, properly referred to the reasonable person in the defendant's circumstances but referenced the actions such person would have taken, which, as we discussed, is not the correct inquiry. For example, during closing argument, the prosecutor argued that "the lens through which you would look at the *defendant's actions* would be those of . . . a reasonable person. *What would a reasonable person do* in the circumstances that the defendant was confronted with?" (Emphasis added.) The prosecutor continued, "please remember the idea of reasonableness and *what a reasonable person would have done* in the defendant's position." (Emphasis added.) Similarly, during rebuttal, the prosecutor argued that "the determination you're going to have to make here is whether *the defendant's conduct is reasonable based on what a reasonable person would do* in the situation that he perceived himself to be in." (Emphasis added.)

State *v.* Parris

prosecutors' improper comments were not made throughout the entire trial but occurred only during closing and rebuttal arguments. Any impropriety during rebuttal argument is particularly troubling, however, as defense counsel did not have an opportunity to respond to such comments. See, e.g., *State* v. *Dabate*, supra, 351 Conn. 454 ("[t]he inflammatory aspect of [the improprieties] was compounded by the fact that the prosecutor made them during rebuttal summation, which meant that the defense could not respond"); see also *State* v. *Sullivan*, 351 Conn. 798, 813, 334 A.3d 446 (2025). In the present case, most of the prosecutors' misstatements of the law occurred during rebuttal. Indeed, as the defendant notes in his brief, if defense counsel had been afforded an opportunity to respond to the rebuttal, he could have rightfully argued that many of the hypotheticals, depending on the circumstances, could have amounted to a scenario consistent with extreme emotional disturbance. Consequently, this factor also favors the defendant.

As to the strength of the curative measures implemented by the trial court and whether they mitigated any adverse effect of the improprieties, we note that the court gave the exact curative instruction requested by defense counsel, which the jury is presumed to have followed. See, e.g., *State* v. *Courtney G.*, supra, 339 Conn. 364 ("[g]iven the isolated nature of the prosecutor's comment and the trial court's prompt and effective curative instruction, which specifically targeted the prosecutorial impropriety, we conclude that this impropriety was not frequent or severe and was cured by the trial court" (footnote omitted)); *State* v. *O'Brien-Veader*, 318 Conn. 514, 550, 122 A.3d 555 (2015) ("to the extent there was any harm, it was mitigated by the trial court's prompt curative instruction directing the jury to disregard the improper questions, which we presume the jury followed"). Notwithstanding that

State *v.* Parris

defense counsel at the time did not request a mistrial in response to the prosecutors' improper comments, we are not convinced that the court's instructions adequately removed the prejudice caused by the impropriety. See, e.g., *State* v. *Alexander*, 254 Conn. 290, 303, 755 A.2d 868 (2000) ("[an impropriety] may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact" (internal quotation marks omitted)). We recognize that this conclusion may be somewhat in tension with the well established principle that "jurors are presumed to follow the instructions given by the judge." (Internal quotation marks omitted.) *State* v. *Williams*, 258 Conn. 1, 15 n.14, 778 A.2d 186 (2001). But, given the prosecutors' numerous misstatements and the complexity of the extreme emotional disturbance defense, together with the fact that the trial court's instructions did not specifically address the misstatements, we cannot be assured under the particular facts of the present case that the prejudicial impact of the impropriety was cured by the trial court's instructions. As noted, the prosecutors' misstatements of the law severely distorted the required legal analysis of the extreme emotional disturbance defense—the defendant's only defense to the murder charge against him—in a number of ways, including by urging the jury to disregard the defendant's subjective belief, by insisting that there had to be a logical nexus between the extreme emotional disturbance and the murder victim, and by focusing on the reasonableness of the crime rather than the reasonableness of the explanation or excuse. Accordingly, although the trial court provided the jury with the proper legal standard in its extreme emotional disturbance instruction, and promptly reminded the jury that it must follow the court's instructions on the law and disregard counsel's statements that were inconsistent with those instructions, its charge did not

352 Conn. 652 JULY, 2025 683

State *v.* Parris

explain that it is not the act of killing that must be supported by a reasonable excuse but, rather, the extreme emotional disturbance. Nor did it explain that the choice of the defendant's victim was not part of the jury's reasonableness analysis. Similarly, the court did not instruct the jury to disregard the prosecutor's hypotheticals. We therefore are not persuaded that the court's curative instructions, together with its accurate charge on the defense, eliminated the prejudicial impact of the impropriety given the challenging legal concepts involved in evaluating an extreme emotional disturbance defense.[16] Cf. *State* v. *Courtney G.*, supra, 339 Conn. 358 ("prosecutors and defense counsel . . . should avoid paraphrasing the reasonable doubt standard" because it is "both critically important and, at the same time, defies easy explication" (internal quotation marks omitted)).

As to the final *Williams* factor, the strength of the state's case, the state relies heavily on the defendant's demeanor during his interview with the police to argue on appeal that it was reasonable for the jury to conclude that the defendant did not act under extreme emotional disturbance at the time of the murder. Specifically, the state emphasizes that the defendant appeared casual with the officers and spoke clearly and calmly during the interview. The state also relies on the defendant's past relationship with the victim and the alleged lack of evidence that the defendant had suffered from extreme emotional disturbance. To be sure, the video footage supports the state's observations about the defendant's

---

[16] We in no way fault the trial court for the curative measure it took, given that it gave the specific curative instruction requested by defense counsel. Nevertheless, we note that, had defense counsel requested a more forceful admonishment—for example, had he specifically requested, and the trial court agreed to give, an instruction that the prosecutors' statements of the law were incorrect and that explicitly corrected the prosecutors' misstatements—that curative instruction would have been appropriate under these circumstances and might have been sufficient to cure any prejudice.

State *v.* Parris

demeanor during the interview. Nevertheless, we disagree with the state's contention that, on the basis of that evidence, "the jury was likely to reject the defense regardless of any impropriety." Indeed, notwithstanding the defendant's relatively calm demeanor in the video footage, given his explanation of his long-standing belief that the victim and his stepmother were conspiring to ruin his life, which belief was corroborated by other evidence, it would have been reasonable for the jury to conclude that the defendant *was* suffering from extreme emotional disturbance at the time of the homicide, particularly because his stepmother testified that she had not spoken to the defendant for at least twenty years.[17] Although the defendant spoke clearly and calmly during the interview, he also spoke incoherently, rambling about his relationship with his stepmother, claiming that she was stalking him, and alleging that she had forced him to have sexual relations with another man and had approached him at the cemetery "with her eyes glowing yellow . . . ." He additionally spoke about scriptures and implored the police multiple times throughout the three hour interview to arrest his stepmother. Certainly, the trial court, which heard all of the evidence as it was presented, thought that there was sufficient evidence for the jury to accept the defendant's defense insofar as it overruled the prosecutor's objection to the defendant's request to charge on the extreme emotional disturbance defense. Therefore, this factor does not weigh in either party's favor.

Accordingly, considering the *Williams* factors in their totality, we conclude that there is a reasonable likelihood that the jury's verdict would have been different in the absence of the impropriety. Therefore, the defendant has established that the prosecutorial impropriety deprived him of a fair trial in violation of his due

---

[17] See footnote 7 of this opinion.

State *v.* Parris

process rights. As a result, the defendant is entitled to a new trial on the murder charge.

II

Although our conclusion in part I of this opinion that the defendant is entitled to a new trial is dispositive of this appeal, we address the merits of the defendant's additional claim that the trial court abused its discretion when it admitted evidence of his use of homophobic language during his video-recorded statement to the police because it is likely to arise on remand. See, e.g., *State* v. *Raynor*, 337 Conn. 527, 552–53, 254 A.3d 874 (2020). The following additional facts and procedural history are relevant to this claim.

During the defendant's police interview, he stated that he believed that his stepmother had recorded a sexual encounter between him and another man and had used the video recording to sabotage his housing and job opportunities. Throughout the interview, the defendant referred to the recording as the "cock sucking faggot tape" and repeatedly used the term "faggot."

Prior to the start of evidence, defense counsel objected to the admission of the interview without the redaction of the slurs, stating that, although its admission was probative, it became increasingly prejudicial the more often the defendant used the slurs. The prosecutor responded that, although the admission of the interview without redactions could be prejudicial, it could be cured with a curative instruction, and contended that its admission was relevant to the extreme emotional disturbance defense or, alternatively, the defendant's motive and intent in committing the murder.

The trial court admitted the interview in full, stating that, although it agreed with the defendant that the multiple slurs would be cumulative, because the defense was an extreme emotional disturbance defense, the entire

State *v.* Parris

interview was "certainly relevant to that issue—what was he upset about, how upset was he, who was he upset at, and was his reaction then reasonable." The court iterated: "[I]t appears from the [recording] that [the defendant] is upset that his [stepmother] sort of drove him into his homosexual act, that she's using this to . . . torture him, to disrupt his life . . . . [I]t has probative value in light of the fact [that] there's an extreme emotional disturbance defense. If there wasn't that defense, it would simply be prejudicial, it wouldn't be probative, and I wouldn't let it in. But I'm going to allow it with a curative—with an instruction [that the jury is] not to use it in any prejudicial way against [the defendant]."

Prior to playing the video, the trial court gave the following instruction: "[D]uring the interview, you will hear that the defendant used profanity and derogatory language at certain points . . . . That evidence is being offered for a limited purpose, that is, to show the emotional state of the defendant. It may not be used for any other purpose, and you should also not penalize the defendant for his use of such language." During its final charge to the jury, the court additionally stated: "[A]ny profanity or derogatory language used by the defendant in his [video-recorded] interview with the police was admitted for the limited purpose of showing the defendant's emotional state. It may not be used for any other purpose. You shall not consider such evidence in finding any other facts or as to any other issue. You also may not penalize the defendant for using such language."

We begin by setting forth the relevant legal principles that guide our analysis. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be

State *v.* Parris

without such evidence." (Internal quotation marks omitted.) *State* v. *Best*, 337 Conn. 312, 317, 253 A.3d 458 (2020). "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Conn. Code Evid. § 4-3.

"[T]his court has identified four situations in which the potential prejudicial effect of relevant evidence would suggest its exclusion. . . . These are: (1) [when] the facts offered may *unduly* arouse the [jurors'] emotions, hostility or sympathy, (2) [when] the proof and answering evidence it provokes may create a side issue that will *unduly* distract the jury from the main issues, (3) [when] the evidence offered and the counterproof will consume an *undue* amount of time, and (4) [when] the defendant, having no reasonable ground to anticipate the evidence, is *unfairly* surprised and unprepared to meet it. . . . [T]he primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Delacruz-Gomez*, 350 Conn. 19, 24–25, 323 A.3d 308 (2024).

In the present case, the defendant argues that the homophobic slurs he used during the interview were not relevant because, contrary to the trial court's reasoning, an extreme emotional disturbance defense does not depend on a provocation from a specific person. Alternatively, the defendant claims that, if the evidence was relevant to support the extreme emotional disturbance defense, it was substantially more prejudicial

State *v.* Parris

than probative because slurs are inherently prejudicial, and their probative value was significantly reduced in light of other details in the defendant's interview, such as the defendant's stating that his problems with his stepmother led him to "suck a dick." The defendant then contends that the admission was harmful because the use of the term "faggot" tended to stir strong emotions in the jurors insofar as it "was a closely contested case [in which] the evidence pointed to significant mental trauma and stressors that caused [the defendant] to act out in an irrational manner . . . ." We are not persuaded.

We cannot conclude that the trial court abused its broad discretion when it determined that the portions of the defendant's interview that included the slurs were relevant and that, especially if accompanied by cautionary instructions, any danger of unfair prejudice did not outweigh their probative value. First, we agree with the trial court that the defendant's entire interview was relevant to the extreme emotional disturbance defense. Everything the defendant said during the interview gave the jury context to determine whether the defendant satisfied the first element of the defense. In fact, during trial, defense counsel also agreed that the interview in its entirety was probative of the extreme emotional disturbance defense.

Second, the defendant's repeated use of homophobic slurs was not more prejudicial than probative. Although we agree with the defendant that the use of slurs is inherently prejudicial and can incite strong feelings in the jurors, in the present case, the defendant's choice of language and the number of times he used a slur aided the jury in its analysis regarding whether the defendant was suffering from extreme emotional disturbance or whether the disturbance was contrived. See *United States* v. *Mackie*, 893 F. Supp. 12, 14 (E.D. La. 1995) (finding that, "although the slurs may be offen-

State *v.* Parris

sive, redaction of the slurs would not only severely damage 'the flow' of the conversation but also [would] remove relevant evidence from the jury's consideration"). Indeed, the trial court took note of the potential prejudice stemming from the interview but ultimately concluded that the frequency with which the defendant used slurs outweighed any danger of attendant prejudice, particularly in light of the court's cautionary instructions.

Accordingly, we cannot conclude that the trial court abused its discretion when it admitted the defendant's entire interview without redacting the homophobic slurs.[18]

The judgment is reversed as to the defendant's murder conviction and the case is remanded for a new trial on that charge.

In this opinion McDONALD, D'AURIA, ECKER and DANNEHY, Js., concurred.

ALEXANDER, J., with whom MULLINS, C. J., joins, concurring in part and dissenting in part. I respectfully disagree with part I of the majority opinion, which holds that multiple misstatements of the law concerning the affirmative defense of extreme emotional disturbance under General Statutes § 53a-54a (a) by the prosecutors during closing and rebuttal arguments deprived the defendant, Robert Parris, of a fair trial.[1] My application of the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), leads me to conclude

---

[18] Should the entire statement, including the portions containing the slurs, be admitted into evidence at a new trial, we encourage the court to follow the example set by the trial court during the first trial and to provide similar curative instructions.

[1] I agree with part II of the majority opinion, which concludes that the trial court did not abuse its discretion by admitting the defendant's video-recorded interview with the police in its entirety, without redaction of certain homophobic language that he had used during that interview.

State *v.* Parris

that these apparent misstatements of the law, however inartful, did not violate the defendant's right to a fair trial. Any prejudice resulting from these misstatements was not severe because they were accompanied by several correct statements of the law and were mitigated by directions from both the trial court and the prosecutors to follow the court's legal instructions with respect to the extreme emotional disturbance defense. Because I would affirm the judgment of conviction, I respectfully dissent in part.

I agree with the facts and procedural history as set forth in the majority opinion and that the general principles governing our review of prosecutorial impropriety claims are well established. See, e.g., *State* v. *Sullivan*, 351 Conn. 798, 809–11, 334 A.3d 446 (2025). It is axiomatic that, during closing arguments, a prosecutor may not "misstate the law or . . . distort the government's burden of proof . . . because such statements are likely to improperly mislead the jury." (Internal quotation marks omitted.) *State* v. *Courtney G.*, 339 Conn. 328, 357, 260 A.3d 1152 (2021); see, e.g., *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012); *State* v. *Rizzo*, 266 Conn. 171, 262 n.49, 833 A.2d 363 (2003). A two step process governs this court's analysis of prosecutorial impropriety claims. First, we must determine whether impropriety occurred in the first instance, and, second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. See, e.g., *State* v. *Dabate*, 351 Conn. 428, 437, 331 A.3d 1159 (2025).

At the outset, I assume, without deciding, that the challenged comments of the prosecutors misstated the law governing the affirmative defense of extreme emotional disturbance under § 53a-54a (a).[2] "Proof of this

_____

[2] I also agree with the majority's conclusion that other challenged comments, including those referring to the defendant's story in support of his extreme emotional disturbance defense as "contrived" and that it would

State *v.* Parris

defense by a preponderance of the evidence . . . entitles the defendant to a conviction of manslaughter in the first degree, instead of a conviction of murder.'' (Citation omitted; footnote omitted.) *State* v. *Person*, 236 Conn. 342, 351, 673 A.2d 463 (1996). ''[T]he statute sets forth a standard that is objective in its overview, but subjective as to the defendant's belief.'' *State* v. *Elliott*, 177 Conn. 1, 7, 411 A.2d 3 (1979). Under the objective component, the reasonableness of the defendant's emotional disturbance[3] is ''to be determined from the viewpoint of a person in the defendant's situation under the circumstances *as the defendant believed them to be . . . .*'' (Emphasis added.) General Statutes § 53a-54a (a). Contrary to the majority, I conclude that these assumed misstatements of the law did not deprive the defendant of a fair trial.

To prove that prosecutorial impropriety deprived the defendant of a fair trial, ''the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process. . . . In weighing the significance of an instance of prosecutorial impropriety, a reviewing court must consider the entire context of the trial, and [t]he question of whether the defendant has been prejudiced by prosecutorial

be ''horrible'' for the defendant to raise this defense, did not constitute prosecutorial impropriety.

[3] A person acts under the influence of an extreme emotional disturbance when his ''self-control and reason are overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions. . . . [A] homicide influenced by an extreme emotional disturbance [however] is not one [that] is necessarily committed in the hot blood state but rather can be one brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then [to] react violently, seemingly without provocation.'' (Citation omitted; internal quotation marks omitted.) *State* v. *Person*, supra, 236 Conn. 351–52.

State *v.* Parris

[impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different [in the absence of] the sum total of the improprieties. . . .

"To aid this court in determining whether a prosecutorial impropriety so infected the proceedings with unfairness as to deprive a defendant of a fair trial, this court applies the [*Williams*] factors . . . . These factors include (1) the extent to which the [impropriety] was invited by defense conduct or argument, (2) the severity of the [impropriety], (3) the frequency of the [impropriety], (4) the centrality of the [impropriety] to the critical issues in the case, (5) the strength of the curative measures adopted, and (6) the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Sullivan*, supra, 351 Conn. 821–22. The *Williams* factors may be intertwined and overlap, and "none . . . is determinative on its own." *State* v. *Dabate*, supra, 351 Conn. 467 n.25.

In applying the *Williams* factors, I acknowledge that most seem to favor the defendant. The prosecutors' misstatements of the law were not invited by defense argument or conduct. The challenged comments, especially the illustrative hypotheticals in the rebuttal argument, were not isolated; they were significant, rhetorical points in the prosecutors' response to the affirmative defense of extreme emotional disturbance. Cf. *State* v. *Albert D.*, 196 Conn. App. 155, 178–79, 229 A.3d 1176 (prosecutor's brief misstatements of law in "quick succession" during rebuttal argument were not frequent or severe), cert. denied, 335 Conn. 913, 229 A.3d 118 (2020). Many of the challenged comments were rendered potentially more "inflammatory . . . by the fact that the prosecutor made them during rebuttal [argument], which meant that the defense could not respond." *State* v. *Dabate*, supra, 351 Conn. 454; see *State* v. *Sullivan*, supra, 351 Conn. 813. Defense counsel in the pres-

State *v.* Parris

ent case deemed them severe enough to warrant an objection and a request for a curative instruction, which the trial court granted. See *State* v. *Sullivan,* supra, 822–23. Further, the state's evidence with respect to overcoming the extreme emotional disturbance defense was not overwhelming. That issue turned on the extent to which the jury would credit the defendant's statements during his video-recorded interview with the police, many of which reflected his mental health issues and misperceptions of reality. But cf. *State* v. *Courtney G.*, supra, 339 Conn. 365–66 (lack of physical evidence in child sexual assault cases does not render state's case "automatically weak" (internal quotation marks omitted)).

The *Williams* analysis is not, however, a mathematical exercise, and it is not dispositive that most of the factors appear to favor the defendant in this case. With respect to the severity of the misstatements of the law, a review of the prosecutors' closing and rebuttal arguments indicates that the prosecutors also recited the appropriate legal standard and advised the jury to follow the law as charged by the trial court. During rebuttal argument, the prosecutor stated that "the determination you're going to have to make here is whether the defendant's conduct is reasonable based on what a reasonable person would do in the situation that [the defendant] perceived himself to be in," and that, "in determining the reasonableness of the defendant's explanation or excuse, you must measure that reasonableness from the viewpoint of a reasonable person in the defendant's situation." Although the prosecutor's statements of the law could have been more artfully phrased to clarify that it was the defendant's subjective belief as to the situation that set the parameters for the reasonableness of the emotional disturbance that precipitated the response, overall, they conveyed to the jury that it was the circumstances and perception of the defendant that mattered most in the analysis.

State *v.* Parris

Mitigating the severity of the misstatements of the law are the prosecutors' multiple exhortations to the jury to follow the law as instructed by the trial court. At the start of closing argument, the prosecutor explained that, although the summations would address the law, it would be the "judge's instructions on the law that controls" in the event of any "conflicts . . . ." Highlighting the anticipated extreme emotional disturbance defense, the prosecutor then advised the jury that it would "*get an instruction on the law from the judge*" and that it should "*pay very careful attention to that instruction*," reiterating that request a short time later. (Emphasis added.) In discussing the burden of proof applicable to the defense, the prosecutor stated that the defendant bore the burden of proving mitigation by a preponderance of the evidence and that the jury should "*pay attention to that when the judge gives that instruction.*" (Emphasis added.) Although I assume the prosecutor's next comment to be a misstatement of the legal standard, which focused on how a "reasonable person" would react in the circumstances of the case, that comment was also phrased as something to "*keep in mind* [*when*] *listening to* [*the judge's*] *instruction* . . . ." (Emphasis added.)

With respect to the prosecutor's rebuttal argument, during which the majority of the challenged comments and hypotheticals occurred, the prosecutor stated that he agreed with defense counsel that it was the jurors' "*duty to follow the law as* [*the trial court*] . . . *give*[*s*] *it to you*" and "to determine the facts that are present[ed] in the courtroom and [to] apply the law, *most importantly*, that [the trial court] gives you to those facts." (Emphasis added.) A short time later, after asking the jury to weigh the evidence on the defense of extreme emotional disturbance and asking the first series of hypotheticals about why the defendant had chosen to kill this particular victim, the prosecutor

State *v.* Parris

urged the jury, "when you determine this defense . . . *pay very [close] attention to what the [trial court] instructs*." (Emphasis added.) After explaining his view of the objective element, the prosecutor immediately asked the jury again to "[*l*]*isten to what the court says*." (Emphasis added.)

Most significant, the trial court implemented curative measures that addressed the prosecutors' misstatements of the law. In response to an objection by defense counsel, the court granted his request to admonish the jury to the effect that "you have heard from both attorneys or both sides about . . . what the standard is, and I'm going to give you the law and you are to follow the law." The trial court then instructed the jury accordingly, highlighting, both generally and specifically, the affirmative defense of extreme emotional disturbance. The court emphasized that, "[i]f anything [the attorneys] said [during closing and rebuttal arguments] differs from what I say, you're to disregard what they said and [to] follow my instructions . . . on all issues of law, and particularly on the issue of extreme emotional disturbance." There is nothing in the record to rebut the well settled presumption that the jury followed that instruction. See, e.g., *State* v. *Dabate*, supra, 351 Conn. 466.

Given the unchallenged jury charge on the law generally, and the trial court's identification of the extreme emotional disturbance defense as a key legal issue subject to its instructions, I see no reason to depart from Connecticut's ample body of case law holding that even general curative instructions protect a defendant's right to a fair trial by mitigating any potential harm from a prosecutor's misstatement of the law. See, e.g., *State* v. *Albert D.*, supra, 196 Conn. App. 179–80 (Prejudice from prosecutor's misstatement of law concerning expert witnesses was "reduced by the court's final instructions to the jury following closing arguments . . . that it was

State *v.* Parris

solely the jury's function to assess credibility and that none of the arguments made by the attorneys constituted evidence. Moreover, the court correctly instructed the jury that the law required the experts to testify in general terms.''); *State* v. *Dawson*, 188 Conn. App. 532, 567–70, 205 A.3d 662 (2019) (prosecutor's misstatement of law of constructive possession three times during closing argument did not deprive defendant of fair trial, given trial court's correct statement of law to jury and prosecutor's reminder to jury to follow court's instructions), rev'd in part on other grounds, 340 Conn. 136, 263 A.3d 779 (2021); *State* v. *Gonzalez*, 188 Conn. App. 304, 338, 341–42, 204 A.3d 1183 (2019) (in rejecting claim that prosecutor's shorthand definition of home invasion charge misled jury, court relied on unchallenged jury charge and prosecutor's emphasis that trial court would provide full instructions), aff'd, 338 Conn. 108, 257 A.3d 283 (2021); *State* v. *Nicholson*, 155 Conn. App. 499, 517–19, 109 A.3d 1010 (prosecutor's misstatement regarding right to use deadly physical force for purposes of justification defense was rendered harmless by court's general instructions and reminder to follow court's instruction on law of self-defense), cert. denied, 316 Conn. 913, 111 A.3d 884 (2015). Thus, my *Williams* analysis leads me to conclude that the defendant's right to a fair trial was protected by the curative instruction that was targeted to address the apparent misstatements of the law by the prosecutors in their closing and rebuttal arguments.

Although any impropriety in the prosecutors' closing and rebuttal arguments did not deprive the defendant of a fair trial in this case, one final observation is warranted. The majority posits that the nature of the challenged hypotheticals, along with the accompanying explanation of the governing legal principles, suggests that they were prepared in advance and were not the product of the rough and tumble of oral argument for

352 Conn. 652 JULY, 2025 697

State *v.* Parris

which we need to allow "generous latitude . . . ." (Internal quotation marks omitted.) *State* v. *Sullivan*, supra, 351 Conn. 810. I agree with that observation. Nevertheless, I do not ascribe any nefarious purpose to the prosecutors from this preparation; there is nothing in the record to suggest that these comments were anything more than a misstatement of a relatively complex area of the criminal law, as was discussed at oral argument before this court. Given this complexity, I agree with the majority that prosecutors must be extremely cautious in how they communicate relevant legal concepts and make sure to adhere to the principles as described in the trial court's jury instructions or other legal authorities. See, e.g., *State* v. *Courtney G.*, supra, 339 Conn. 358.

Because I would affirm the judgment of conviction, I respectfully dissent in part.